2015 WY 67

**Ryon Termaine FENNELL,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

No. S–14–0239.

Supreme Court of Wyoming.

May 12, 2015.

Representing Appellant: Office of the Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel. Argument by Ms. Olson.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Jeremy A. Gross, Assistant Attorney General. Argument by Mr. Gross.

Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.

KITE, Justice.

[¶ 1]   A jury found Ryon Termaine Fennell guilty of three counts of delivery of cocaine. He appeals from the judgment and sentence, asserting the prosecutor committed misconduct when he elicited improper testimony and called an improper rebuttal witness; he was denied his right to confrontation when law enforcement officers were allowed to testify concerning results of tests conducted by others; his trial counsel was ineffective; and there was insufficient evidence to sustain his conviction. Concluding that trial counsel's performance was ineffective and Mr. Fennell was prejudiced thereby, we reverse the conviction and remand for a new trial.

## ISSUES

[¶ 2]   We re-phrase Mr. Fennell's statement of the issues and address them in the following order:

1.   Whether the evidence was sufficient to sustain Mr. Fennell's conviction;

2.   Whether Mr. Fennell was denied his right to confrontation when law enforcement officers testified about results of tests conducted by others;

3.   Whether the prosecutor committed misconduct by improperly eliciting testimony that invaded the province of the jury and calling an improper rebuttal witness; and

4.   Whether Mr. Fennell's trial counsel was ineffective.

## FACTS

[¶ 3]   In the fall of 2012, Jeff Wheeler, an employee of Goofy's Bar in Cheyenne, Wyo-

ming, approached a Cheyenne police officer, informed him there were illegal drugs running through the bar and offered to assist law enforcement in addressing the problem. The officer put Mr. Wheeler in touch with the Wyoming Department of Criminal Investigation (DCI) and a plan was developed to use Mr. Wheeler as a confidential informant to purchase drugs from those involved. On three separate occasions that fall, Mr. Wheeler arranged meetings with Mr. Fennell and returned from those meetings with cocaine. On each occasion, law enforcement searched Mr. Wheeler and his vehicle, provided him with cash and a concealed recording device and followed him to the pre-arranged location for the buy. After each buy, law enforcement followed him to the DCI office, retrieved the purchased substance from him, searched him and his car, and debriefed him about what had transpired. Laboratory tests performed on the substances obtained from each purchase were positive for the presence of cocaine. In March 2013, the Laramie County district attorney's office issued an information charging Mr. Fennell with three counts of delivery of cocaine in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2013).[1]

[¶ 4] A two day jury trial was held in December 2013. The State presented testimony from the confidential informant and three law enforcement officials involved in the investigation. Mr. Fennell testified in his own defense and denied that he sold controlled substances to the informant. He said the informant owed him money and the meetings between them were for the purpose of getting paid back. His theory was that the informant set him up in order to avoid having to pay back the money he owed.

[¶ 5] The jury found Mr. Fennell guilty on all three counts of delivering cocaine. The district court sentenced him to serve eighteen to thirty-six months on the first count and four to six years on the second and third counts, but suspended the latter two sentences and imposed a period of probation to continue for three years after completion

of the sentence on the first count. Mr. Fennell appealed.

## DISCUSSION

### 1. Sufficiency of the Evidence

[¶ 6] We have said:

The Double Jeopardy Clause precludes a second trial once a reviewing court has found the evidence presented in the first trial legally insufficient to support the conviction. *Tanner v. State*, 2002 WY 170, ¶ 17, 57 P.3d 1242, 1247 (Wyo.2002); *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). The only "just" remedy available upon such a finding is an order directing entry of a judgment of acquittal. *Id.* Thus, a finding that the State presented insufficient evidence to support the jury's guilty verdict ... would fully resolve this case and we begin by considering that issue.

*Ken v. State*, 2011 WY 167, ¶ 17, 267 P.3d 567, 572 (Wyo.2011).

[¶ 7] Mr. Fennell contends the evidence was insufficient to support his conviction because no qualified witness testified that the substance the informant gave to law enforcement fit within the definition of a Schedule II controlled substance. Mr. Fennell asserts the legislature has adopted a precise scientific definition of Schedule II substances, and the State was required to present a qualified witness to testify that the substance in this case was subjected to reliable testing demonstrating that it was in fact a Schedule II substance, cocaine.

[¶ 8] The following standards govern our review of a sufficiency of the evidence claim:

[W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements

1. The original information actually charged Mr. Fennell with delivery of cocaine-based "crack." It was subsequently amended to allege delivery of cocaine-based "powder."

of the crime was proven beyond a reasonable doubt.

*Ken,* ¶ 19, 267 P.3d at 572, quoting *Daves v. State,* 2011 WY 47, ¶ 30, 249 P.3d 250, 259 (Wyo.2011).

[¶ 9] The evidence relating to the testing of the substance consisted of the testimony of three law enforcement officials. First, the State presented the testimony of Special Agent Joe Brock of the United States Drug Enforcement Administration (DEA). He testified that "we" performed a field test on the substance and then submitted it to the state crime lab. Agent Brock did not testify about the results of either the field test or the lab test. The State also called Agent Jason Moon from DCI who testified that "Agent Edwards and I believe Agent Brock" field tested the substance and then he took it to the state crime lab for analysis. He testified without objection that the substance tested positive for cocaine. Finally, the State presented the testimony of Officer Aaron Wilmarth of the Cheyenne Police Department. He testified that the substance was field tested and sent to the state crime lab. He also testified, again without objection, that the test showed the substance "contained cocaine, which is a Schedule II drug."

[¶ 10] It appears that none of the State's witnesses performed the actual laboratory tests that confirmed the substance was cocaine. It is not entirely clear from the record whether any of the witnesses personally performed any of the field tests. It is clear that the two witnesses who testified that the substance tested positive for cocaine, Agent Moon and Officer Wilmarth, did not perform the actual testing. Absent testimony from a witness who actually performed the field or lab tests and concluded the substance was cocaine, a Schedule II drug, any testimony concerning the tests or the results of the tests was inadmissible hearsay. However, defense counsel did not object to any of the testimony concerning the testing. We long ago held that when inadmissible hearsay evidence is admitted without objection, the trier of fact may give it the weight to which it is entitled. *State ex rel. Benham v. Cheever,* 71 Wyo. 303, 311, 257 P.2d 337, 340 (1953). *See also Gore v. Sherard,* 2002 WY 114, ¶ 18,

50 P.3d 705, 711 (Wyo.2002) (Hearsay evidence admitted without objection may be considered and given its natural probative effect.) The jury properly considered the testimony that the substance tested positive for cocaine, a Schedule II substance, and gave it the weight to which it was entitled. The evidence was sufficient to support the conviction.

### 2. *Right to Confrontation*

[¶ 11] Mr. Fennell contends he was denied his right to confront the witnesses against him when law enforcement officers testified concerning the results of laboratory tests performed by other individuals who did not testify. Specifically, he points to the testimony of Agent Moon and Officer Wilmarth that the substance in the bags obtained from the informant tested positive for cocaine and no fingerprints were found on the bags. Neither witness performed the laboratory testing; rather, testing of the substance and for fingerprints on the bags was done by individuals who did not testify at the trial. As with Mr. Fennell's claims of prosecutorial misconduct, we review his confrontation claim for plain error because defense counsel did not object to the testimony.

[¶ 12] The State responds that Mr. Fennell cannot establish plain error with respect to the drug testing because the record does not clearly show that the witnesses who testified the substance was cocaine were not involved in the field tests. The State also contends the parties stipulated that the substance was cocaine, its identity was not in dispute, and no prejudice resulted from any inability to cross-examine the individuals who conducted the testing.

[¶ 13] Addressing Mr. Fennell's claim that he was denied his right to confrontation when witnesses who did not do the testing for fingerprints testified no fingerprints were found, the State maintains the confrontation clause protects a defendant's right to confront the witnesses against him; the witness testimony concerning the lack of fingerprints was in Mr. Fennell's favor; therefore, he had no right of confrontation. The State further asserts Mr. Fennell had the option of calling the individuals who performed the finger-

print testing in the defense portion of the trial.

[¶ 14] We first address the State's contention that Mr. Fennell's confrontation claim concerning the substance is precluded because defense counsel stipulated that it was cocaine. A written stipulation does not appear in the record and the district court did not instruct or inform the jury the parties had stipulated that the substance was cocaine. However, in its designation of witnesses and exhibits, the State indicated the parties had stipulated that the "substance seized is cocaine in powder form, a schedule 2 controlled substance."[2] In his pretrial submission, defense counsel stated, "The stipulations of the parties are set forth in the [State's] filing," thereby conceding that he had stipulated the substance was cocaine. Then in closing argument, the prosecutor told the jury twice without objection from defense counsel that the parties agreed the substance was cocaine.

[¶ 15] A stipulation is a substitute for evidence. Edward J. Imwinkelried & Daniel D. Blinka, *Criminal Evidentiary Foundations*, ch. 11 (2d ed.2007). The stipulation in this case involved an element of the offense charged. "While an instruction cannot properly require a jury to find an element of a charged offense against a defendant in a criminal case, a stipulation can pave the way for an instruction that excuses the prosecutor from offering proof." 1 Mueller and Kirkpatrick, *Federal Evidence* § 4:17 (4th ed.). Some courts require stipulations to be in writing, in which case the stipulation can be received as evidence and provided to the jury or the court can give a jury instruction containing the stipulation. Imwinkelried, *id.;* 73 Am.Jur.2d *Stipulations* § 2 (2012). Other courts allow stipulations to be made orally on the record outside the presence of the jury. Imwinkelried, § 11.02[2]. In that case, after establishing the terms of the stipulation and that the parties understand its consequences, the court informs the jury of the stipulation and instructs on its legal effect. Imwinkelried, *id.* None of this occurred here. The

existence of any stipulation that the substance retrieved from the informant was, in fact, cocaine was not properly communicated to the jury. It might, therefore, be considered a nullity. We do not reach that issue, however, because we find that Mr. Fennell waived his right to confrontation when law enforcement officers were allowed to testify without objection that the substance tested positive for cocaine.

[¶ 16] In *Belden v. State,* 2003 WY 89, ¶ 35, 73 P.3d 1041, 1086 (Wyo.2003) this Court held that a defendant may waive his Sixth Amendment right to confrontation. We quoted with approval from the following case:

> We recognize that examination of the circumstances of each case is essential when considering any waiver of constitutional rights because "[v]ariations in the factual context giving rise to the issue of waiver of any one right of the accused are infinite.".... We also recognize that we must accord proper weight to the role of defense counsel in fashioning an overall trial strategy, including one involving waiver of the right to confrontation, for the defendant's best advantage.... A well developed body of case law protects defendants from constitutionally defective actions of their attorneys. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Given these safeguards, we reject Plitman's argument that a defendant in every instance personally must waive the right to confront the witnesses against him. We therefore join the majority of circuit courts of appeals and hold that defense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound.

*United States v. Plitman,* 194 F.3d 59, 64 (2nd Cir.1999) (some internal citations omitted).

---

2. Also in its pretrial submission, the State designated a forensic analyst from the state crime lab to testify concerning the examination and testing of the evidence collected consistent with the lab report provided to the defense. Presumably, the State elected not to call this witness because defense counsel stipulated that the substance was cocaine.

[¶ 17] In *Belden*, ¶ 36, 73 P.3d at 1086, the district court gave the defense a choice as to whether evidence of prior sexual assault accusations would be admitted through witness testimony or by reading a written statement to the jury. Defense counsel specified a preference for the written statement. Before the statement was read to the jury, the court presented the statement to both parties for suggestions which were incorporated into the final statement. We held under these circumstances:

> Once the trial court ruled that the evidence was admissible, defense counsel had to determine how to proceed while defending the best interests of their client. Apparently, defense counsel concluded that it would be best to avoid having the accusers take the stand. Accordingly, ·defense counsel supported the admission of the evidence through the written statement even though that would mean waiving Belden's Sixth Amendment right to confrontation. That was a tactical decision we will not question with hindsight. Belden has failed to demonstrate that the decision constituted plain error and his claim must fail.

[¶ 18] Mr. Fennell's counsel apparently made a similar tactical decision not to object to hearsay testimony that the substance the informant turned over to law enforcement was cocaine. Whether that decision constituted a deficiency in performance that prejudiced Mr. Fennell's defense is a question falling within an ineffective assistance of counsel claim. For purposes of the present issue, we conclude defense counsel waived any claim Mr. Fennell may otherwise have had that he was denied the right to confront the witnesses who performed the tests showing the substance contained cocaine.

■ [¶ 19] Mr. Fennell also contends he was denied his right to confrontation because two of the State's witnesses testified that no fingerprints were found on the bags containing the cocaine although they had not performed the tests for fingerprints. One difficulty with this contention is that defense counsel was the first to raise the issue that the bags were tested for fingerprints. On cross-examination of Agent Brock, the following exchange occurred:

Q. Do you have any knowledge or idea whether my client's fingerprints were on any of the baggies we've talked about?

A. I have no idea.

Q. Is that normal to check or have a laboratory explore that?

A. It's an option to use, yes.

Then during direct examination of Agent Moon, the prosecutor proceeded as follows:

Q. The baggies you're holding there, are those the ones the cocaine was in when the buy was made?

A. ... No, sir.

Q. ... Why were they taken out of the original packaging?

A. For the latent print processing.

Q. ... do you know if any results came out of that?

A. I believe no latent prints were discovered on them.

On cross-examination, defense counsel followed up with Agent Moon by asking, "... you're saying there were no fingerprints of Mr. Fennell on any of ... the baggies?" Agent Moon responded: "Yes, of anybody."

[¶ 20] One authority has stated:

> At the heart of the doctrines [of invited error and opening the door] is the notion that a party who broaches a subject in almost any way—by argument, by relying on evidence, by putting questions to witnesses called by others, by calling witnesses and adducing their testimony—is limited by these strategic choices. He can neither object to his own folly nor complain about reasonable countermoves by others, and usually cannot succeed on appeal in predicating claims of error on such points.

Mueller and Kirkpatrick, Federal Evidence § 1:12 (Fourth ed.). Defense counsel solicited testimony about the fingerprint testing and, when the prosecution did likewise, used the testimony to his advantage. His objection now is not well-founded.

[¶ 21] Another difficulty with Mr. Fennell's claim is that the testimony was not adverse to him. Rather than implicating him in the sale of the cocaine, it showed his fingerprints were not found on the baggies. Finally, if there was other favorable testimo-

ny to be gleaned from the lab analyst concerning the fingerprints, the defense was free to call the witness in its case. Mr. Fennell was not denied his right of confrontation.

### Prosecutorial Misconduct

[¶ 22] Mr. Fennell contends that prosecutorial misconduct occurred in six instances. Five of those instances involved questions by the prosecutor soliciting answers from witnesses that Mr. Fennell asserts invaded the province of the jury. Three of those five instances involved questions Mr. Fennell claims prompted testimony that, in substance, amounted to an opinion that he was guilty of the crimes charged. The other two instances involved comments Mr. Fennell contends went to witness credibility. Finally, Mr. Fennell asserts prosecutorial misconduct occurred when the prosecutor called an improper rebuttal witness.

[¶ 23] Defense counsel did not object at trial to any of the prosecutor's questions or comments, the witness testimony elicited in response to the questions or the State's rebuttal witness. We, therefore, review the claims for plain error. *Lindstrom v. State*, 2015 WY 28, ¶ 31, 343 P.3d 792, 799 (Wyo.2015), citing *Anderson v. State*, 2014 WY 74, ¶ 40, 327 P.3d 89, 99 (Wyo.2014). Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice. *Id.*, ¶ 31, 343 P.3d at 799–800. Reversal as a result of prosecutorial misconduct is not warranted unless a reasonable probability exists that absent the error the defendant may have enjoyed a more favorable verdict. *Id.* As reflected in the subsections below, each of the instances Mr. Fennell points to clearly appears in the record; therefore, the first prong of the plain error test is satisfied. As for the second and third prongs of plain error, we begin by considering Mr. Fennell's assertion that the prosecutor improperly invaded the province of the jury by soliciting testimony that amounted to an opinion of his guilt.

### a. Invading the province of the jury—opinion of guilt.

[¶ 24] The law is clear that it is the jury's role to determine the guilt of the accused and a witness may not express an opinion as to his guilt. *Carter v. State*, 2012 WY 109, ¶ 11, 282 P.3d 167, 170 (Wyo.2012), citing *Ogden v. State*, 2001 WY 109, ¶ 21, 34 P.3d 271, 276 (Wyo.2001); *Whiteplume v. State*, 841 P.2d 1332, 1338 (Wyo.1992); *Bennett v. State*, 794 P.2d 879, 881 (Wyo.1990); *Stephens v. State*, 774 P.2d 60, 66 (Wyo.1989). Mr. Fennell asserts the prosecutor violated this rule and improperly solicited testimony that, in substance, amounted to an opinion of his guilt in the following three instances:

**1.**

[Prosecutor:] So when you put the text messages in context, when you watch the car come up and the confidential informant gives you cocaine, when you put it all in context, what happened that day?

[Agent Brock:] The confidential source met with [Mr. Fennell] and purchased about five and a half grams of cocaine.

**2.**

[Prosecutor:] So how do you know a drug transaction happened?

[Agent Moon:] ... we made the controlled purchase and tried to control that as much as possible. The confidential informant was provided with money. The text messages, the search of his vehicle, the search of himself, the wireless transmitter kind of feeding us information, or at least audio. At that point he meets with Mr. Fennell. He comes back to us. He has I believe it was seven and a half grams of cocaine and no money.... we've watched him meet with Mr. Fennell. And then at that point he comes back to us, and he has seven and a half grams of cocaine.... He doesn't have 400 bucks anymore.

And then we go to search him. There's no controlled substances on him. There is no other money present, no contraband. We search the vehicle. There's no money, there's no controlled substances, there's no contraband. His statement when we de-

brief him then at that point, too, that this is what occurred.

3.

[Prosecutor:] So what happened on October 3 of 2012?

[Officer Wilmarth:] We used a confidential informant to purchase cocaine from Ryon Fennell through a controlled purchase.

Countering Mr. Fennell's claim that the above testimony amounted to a conclusion that he was guilty of delivering cocaine, the State argues the witnesses did not give a direct opinion of guilt but rather relayed information to aid the jury in understanding and resolving the factual issues of the case.

[¶ 25] In *Bennett*, 794 P.2d at 883, in an effort to show bias in law enforcement's interpretation of the defendant's activities, defense counsel questioned an investigating officer about whether he suspected the defendant of being a drug dealer even before the transaction giving rise to the charges for which the defendant was being tried. The officer responded, "Yes." On re-direct, the prosecutor asked the officer why he held the opinion that the defendant was a drug dealer. *Id.* at 882. Upon defense counsel's objection, the district court instructed the witness to limit his testimony supporting his opinion to events pre-dating the transaction resulting in the current charges; however, the officer testified that his opinion was based upon the very events giving rise to the current charges. On appeal, a majority of the Court concluded the prosecutor's question solicited the officer's opinion that the defendant was the source of the cocaine involved and was guilty of the crimes charged. The officer's testimony, the Court concluded, "went well beyond simply summarizing the facts of his investigation by drawing the ultimate conclusion that the defendant was guilty." *Id.* Because testimony as to the defendant's guilt invaded the province of the jury, the Court reversed the conviction and remanded for a new trial.

[¶ 26] More recently, in *Cureton v. State,* 2007 WY 168, 169 P.3d 549 (Wyo.2007), we concluded a police officer's testimony did not invade the province of the jury to determine the defendant's guilt or innocence. There, a police officer testified that although possession of a large quantity of methamphetamine might suggest either that the drug was for personal use or for sale to others, in his experience certain factors, such as the presence of packaging materials, scales, large amounts of cash and pay/owe sheets, would indicate the drug was being sold. *Id.,* ¶ 8, 169 P.3d at 551. He expressed his opinion that the presence of several of those factors in the case at bar suggested the methamphetamine was being sold. *Id.* The Court held the testimony was not an impermissible comment on the defendant's guilt "but, rather, ... opinion evidence offered to aid the jury in understanding and resolving the factual issues." *Id.,* ¶ 11, 169 P.3d at 551. The Court distinguished *Bennett,* in which it found the testimony at issue to be an impermissible comment on guilt, by noting that there the "officer gave his opinion that the defendant was a drug dealer and specifically linked the facts from his investigation to his conclusion that the defendant was a drug dealer." *Id.,* ¶ 11, 169 P.3d at 552. In contrast, in *Cureton*

> [the officer] never testified or offered a conclusion about whether the [defendant] was a drug dealer or that she was guilty of any particular offense. The officer's testimony merely informed the jury about the meaning and significance of certain items of physical evidence collected at the scene, and left the ultimate conclusion for the jury.

*Id.*

[¶ 27] Re-visiting the issue in *Carter,* ¶ 6, 282 P.3d at 169–170, we held that plain error occurred when, after describing the drugs and drug paraphernalia found on the defendant and at his residence, the prosecutor asked the investigator: "What would you as an expert conclude from that as to whether or not he is simply a user or whether he might be a dealer?" The investigator responded:

> The totality of the circumstances is what I would have to base any decision on when I'm looking at a circumstance like this. With pay/owe sheets and profit and loss statements or sheets, scales, packaging

material, surveillance equipment, I would find that indicative of a drug dealer.

*Id.,* ¶ 6, 282 P.3d at 170. We concluded the testimony went beyond simply summarizing the facts of the investigation and drew the ultimate conclusion that the defendant was guilty. *Id.,* ¶ 14, 282 P.3d at 170. We distinguished our holding in *Cureton* on the basis that the testimony there did not convey an opinion or conclusion about whether the defendant was a drug dealer but merely apprised the jury as to the significance of certain physical evidence. We concluded the circumstances in *Carter* were more analogous to *Bennett,* where the Court held reversible error occurred when a DCI agent was asked his opinion about whether the defendant was a drug dealer and linked facts from his investigation to conclude that he was.

[¶ 28]   In the present case, when the prosecutor asked Agent Brock and Officer Wilmarth "What happened that day?" both witnesses had already testified extensively about the facts and circumstances leading up to and following the meetings between the informant and Mr. Fennell. Placed in context with that testimony, it is clear the prosecutor was soliciting testimony from Agent Brock and Officer Wilmarth that a drug deal occurred. This testimony went beyond summarizing the facts of the investigation or apprising the jury of the significance of the physical evidence by drawing the ultimate conclusion that Mr. Fennell sold cocaine to the informant. The testimony in substance amounted to an opinion that Mr. Fennell was guilty of the crimes charged. In soliciting that testimony, the prosecutor transgressed a clear and unequivocal rule of law and the second prong of the plain error test is satisfied as to those two instances.

[¶ 29]   As for the testimony of Agent Moon, the prosecutor's question, "How did you know a drug transaction happened?" certainly could have prompted impermissible opinion testimony. However, Agent Moon answered the question by summarizing the facts of what occurred—law enforcement gave the informant money, they searched him and his car, they kept him under surveillance and, after meeting with Mr. Fennell, the informant returned without the money

and with cocaine and stated during debriefing that a drug transaction had occurred. Despite the prosecutor's invitation to give his direct opinion that Mr. Fennell sold cocaine to the informant, Agent Moon confined his response to summarizing the facts. He did not say, as Agent Brock and Officer Wilmarth did, that the informant purchased cocaine from Mr. Fennell. The testimony the prosecutor elicited from Agent Moon was not impermissible opinion testimony as to Mr. Fennell's guilt.

[¶ 30]   Having concluded that the prosecutor transgressed a clear and unequivocal rule of law in prompting testimony from Agent Brock and Officer Wilmarth that amounted in substance to an opinion that Mr. Fennell was guilty, we must determine whether the transgression denied Mr. Fennell a substantial right and materially prejudiced his case. *Lindstrom,* ¶ 31, 343 P.3d at 799–800. In *Carter,* we concluded the testimony at issue was highly prejudicial because the State's case against the defendant was not based on a wired buy or confidential informant but was based instead entirely on the evidence found and the State's interpretation of that evidence. The State's case against Mr. Fennell was not based entirely on the evidence found; it was based on the information and cocaine retrieved from a confidential informant after wired buys. Both the informant and Mr. Fennell testified at trial, which allowed the jurors to independently assess their credibility for themselves. The jurors were repeatedly instructed that they were the sole judge of the credibility of the witnesses and witness credibility was within their exclusive province. We presume the jury followed the instructions. *Pendleton v. State,* 2008 WY 36, ¶ 18, 180 P.3d 212, 218 (Wyo.2008). Any adverse effect the impermissible opinion testimony may have had was mitigated by the fact that the jury heard the testimony of Mr. Fennell and the informant, was able to weigh their respective credibility and was instructed that it was the sole judge of their credibility. Under these circumstances, we cannot conclude the admission of the impermissible testimony by itself was so highly prejudicial that but for its admission a reasonable probability exists that the out-

come would have been more favorable to Mr. Fennell.

### b. Invading the province of the jury—witness credibility.

[¶ 31] The law is also clear that it is the jury's role to determine the credibility of witnesses and a prosecutor may not elicit opinions concerning witness credibility. *Ogden*, ¶ 21, 34 P.3d at 276, citing *Huff v. State*, 992 P.2d 1071, 1079 (Wyo.1999) and *Stephens*, 774 P.2d at 68. The law is equally clear that a prosecutor cannot personally vouch for the credibility of a state's witness. *Dysthe v. State*, 2003 WY 20, ¶ 29, 63 P.3d 875, 886 (Wyo.2003). Mr. Fennell contends the prosecutor improperly elicited testimony vouching for the informant's credibility in the following exchange with Officer Wilmarth:

Q. So these confidential informants, they're not police officers?

A. No.

Q. So how do you ensure their trustworthiness when you're doing these investigations?

A. We try to vet them as much as possible through a background process, criminal history checks; and then by vetting the information that they give us, corroborating it with information that we already know from previous investigations or from information that we are able to confirm through the investigation and what they have told us.

Mr. Fennell asserts the prosecutor himself then improperly vouched for the informant's credibility and the credibility of law enforcement when he made the following comments during closing argument:

What we do know is from Jeffrey Wheeler's testimony, he gave [Mr. Fennell] the $400, and he got the cocaine. We know because the agents did their job incredibly well. . . .

. . . .

Again, fortunately, these officers and agents are incredibly good at their job. Why? They controlled the situation.

The question is whether the officer's testimony or the prosecutor's remarks constituted an impermissible opinion about the wit-

nesses' credibility. We address first Officer Wilmarth's testimony.

[¶ 32] Our precedent addressing testimony about a witness's credibility falls generally into three areas: cases where this Court has found the testimony to be permissible; cases where we have found the testimony to be impermissible but concluded no prejudice resulted; and cases in which we have found the testimony was impermissible and resulted in prejudice. In the first category of cases, the Court in *Gayler v. State*, 957 P.2d 855, 859–860 (Wyo.1998), found no error where the prosecutor asked a law enforcement officer whether he had formed an opinion as to an informant's honesty and the witness responded that he had and he felt like the informant was honest. The Court said:

[The witness did not] offer an expert opinion regarding whether the informant was a truthful witness. [He] merely stated that he thought the informant was honest with him when they worked together.

*Id.* at 860. While finding that the testimony did not rise to the level of plain error, however, the Court stated:

[W]e recommend that these types of inquiries be avoided because the determination of whether a statement which refers to a witness' honesty constitutes error hinges so largely on how artfully the question and response are phrased.

*Id.*

[¶ 33] The Court also rejected a claim of vouching in *Chapman v. State*, 2001 WY 25, ¶ 20, 18 P.3d 1164, 1173 (Wyo.2001), where the prosecutor prompted expert witness testimony concerning general symptoms common to sexual abuse victims and how those symptoms related to the victim in that case. Because the witness did not testify that she believed the victim's account of what happened or as to any conclusions she may have reached about whether the victim had been sexually abused, the Court found no error.

[¶ 34] In *Ogden*, ¶ 28, 34 P.3d at 277, the Court rejected a claim that the prosecutor improperly elicited opinion testimony suggesting witnesses to an accident were credible and reliable. The witness, a detective, testified that four teenage boys who wit-

nessed the accident "had very good detail. It was obvious to me they were focused on the event." *Id.* The detective also testified that the accident victim's statement was consistent with the boys' statements, nothing led him to believe the victim had told the boys what to say, and the statements of the witnesses did not change the determination he made after interviewing the defendant that the defendant was not free to leave. Stating that the detective at no time testified that he believed the young witnesses were credible, but merely said the versions of what happened were consistent and he relied upon them in determining probable cause existed to arrest the defendant, the Court found the testimony permissible. *Id.*, ¶ 27, 34 P.3d at 277.

[¶ 35] Similarly, in *Burton v. State*, 2002 WY 71, ¶ 32, 46 P.3d 309, 319–320 (Wyo. 2002), the Court concluded the prosecutor did not elicit improper testimony when he asked a detective whether the sexual assault victim's trial testimony was inconsistent with statements she made during the investigation and the detective responded it was consistent except she included some additional information in her testimony. The Court stated:

> The detective merely stated that the victim's rendition of the events at trial was in harmony with her earlier statements. He did not state that he believed the victim's version of the events or that he believed Burton was guilty of the offenses. Even though the detective's testimony may have had the incidental effect of bolstering the victim's credibility, the trial court did not violated a clear and unequivocal rule of law when it allowed the testimony.

*Id.*, ¶ 41, 46 P.3d at 320.

[¶ 36] In contrast to the above cases, in which this Court found no impermissible vouching testimony, we held in *Metzger v. State*, 4 P.3d 901, 906–907 (Wyo.2000), that the prosecutor violated a clear and unequivocal law when he asked the victim's father whether he believed his daughter when she told him she was telling the truth and the father said, "Yes;" however, we concluded the error did not affect a substantial right because there was no reasonable possibility that in its absence the verdict would have

been more favorable to the defendant. *Id.* at 907. The Court noted that in closing argument the prosecutor relied on the inherent believability of the victim's story, not on the witness testimony concerning her credibility; the defense did not ask for a corrective instruction at the time of the testimony; and the jury was fully and properly instructed on their role in determining the credibility of witnesses. *Id. See also Lancaster v. State*, 2002 WY 45, 43 P.3d 80 (Wyo.2002) where the Court concluded the prosecutor violated a clear rule of law when he asked a witness if he believed the defendant's stories and the witness said he did not, but concluded no prejudice resulted because the "State presented a huge amount of evidence against the [defendant]" and the witness was fully subjected to cross-examination as to his opinion of the defendant's stories. *Id.*, ¶ 53, 43 P.3d at 99–100.

[¶ 37] In several cases, the Court has found that impermissible testimony was elicited and caused prejudice. In *Stephens*, 774 P.2d at 65–66, also a child sexual abuse case, the Court found the prosecutor had elicited impermissible vouching testimony from witnesses when he asked if they had an opinion as to whether the victim had been abused and they responded they believed he had been. *Id.* The prosecutor also asked one of the witnesses whether he believed what the victim told him and he responded affirmatively. *Id.* at 66.

[¶ 38] Similarly, the Court in *Whiteplume*, 841 P.2d at 1337, 1340, held testimony from a sheriff's deputy, unsolicited by the prosecutor, that "I listened to [the victim's] story and made a determination that she had been raped" constituted vouching for the credibility of the victim and was impermissible. The Court contrasted the testimony to a case where a witness testifies about the results of tests he performed and expresses the opinion that those results suggested the victim was sexually abused. *Id.* The Court distinguished the latter situation from the deputy's testimony because the witness's opinion was based on the test results, not the witness's opinion of the victim's credibility. *Id.* The deputy's opinion, however, was based entirely on his assessment of the victim's

credibility. *Id.* Addressing the issue of prejudice, the Court stated:

> The issue presented in the light of the factual backdrop of this case is a close one that truly calls upon the most careful exercise of delicate judicial judgment. Weighing all of the above and foregoing factors, we conclude that the admission of the deputy sheriff's "rape determination" testimony undermines our confidence in the jury's verdict. Consequently, we hold that a reasonable possibility exists that, had the jury not heard the deputy sheriff's "rape determination" testimony, the verdict might have been more favorable to the [the defendant.]"

*Id.* at 1340–1341.

[¶ 39] None of these cases involved exactly the same scenario as the prosecutor's question to Officer Wilmarth. The prosecutor here did not ask the officer whether he believed the particular informant was honest as was the case in *Gayler* or was being truthful as in *Metzger*. As in *Chapman*, the prosecutor did not ask Officer Wilmarth whether he believed the particular informant's account of what happened. The prosecutor here asked how law enforcement generally goes about ensuring the trustworthiness of confidential informants. Officer Wilmarth responded accordingly by describing how confidential informants are typically scrutinized. No reference was made to this particular informant and the answer informed the jury as to the steps law enforcement officers take before using an informant for a controlled buy.

[¶ 40] Our holding in *Gayler* that it was not improper for the prosecution to ask the officer whether he believed the particular informant was honest would seem to compel the conclusion that the prosecutor's more general inquiry in this case was not improper. However, we are unable to square that holding with our other cases, such as *Metzger*, *Lancaster* and *Stephens*. The latter cases make it clear that it is impermissible for a prosecutor to ask a witness whether he believes another witness. Although the prosecutor here did not ask whether Officer Wilmarth believed the informant, his question implied that law enforcement only uses informants it has ensured are trustworthy; therefore, this particular informant had been deemed trustworthy.

[¶ 41] The State cites *Bolin v. State*, 2006 WY 77, 137 P.3d 136 (Wyo.2006) in support of its contention that the prosecutor's question was not improper. There, the following exchange occurred:

> [Prosecutor:] What sort of process do you follow upon being presented with somebody that may or may not be a potential informant?
>
> [Detective:] Well, first, we sit down and do an interview and we tell them right off the bat, "You have to be 100 percent honest. If we think you're being dishonest with us at all, we're not going to use you. You're not going to get this opportunity to work for us". . . .
>
> [Prosecutor:] Did you check his background?
>
> [Detective:] I asked him about his background. He was very forthcoming, said he had a felony on his record, that it was for either accessory or conspiracy to robbery. Actually, that was one of the things that gave me some good feelings, like maybe I could trust him, because it wasn't—he didn't try to downplay it. Didn't lower it at all. He just said, "Yeah, this is what I did. This is what I got charged with."

*Id.*, ¶ 15, 137 P.3d at 142. We held:

> [The detective] did not improperly comment on the credibility of the confidential informant. He merely testified the informant was forthcoming in disclosing his prior conviction and he relied upon that disclosure in deciding to use him as an informant. [The detective] did not state he believed the informant was credible or encroach on the jury's right to determine his credibility. Any incidental effect the testimony may have had to bolster the informant's credibility was not plain error.

*Id.* The difference between the exchange in *Bolin* and the one in Mr. Fennell's case is that the prosecutor in *Bolin* did not ask the detective about the informant's trustworthiness. The testimony that the informant's forthrightness made the detective feel that he could trust him was not responsive to the

question asked. In Mr. Fennell's case, the prosecutor's question directly solicited testimony about another witness's trustworthiness and was improper.

[¶ 42] We also conclude the prosecutor acted improperly when he made the following statements to the jury in closing argument:

– We know [Mr. Fennell delivered cocaine to the informant] because the agents did their job incredibly well.

– Again, fortunately, these officers and agents are incredibly good at their job.

These statements are similar to statements we found improper in *Guy v. State*, 2008 WY 56, 184 P.3d 687 (Wyo.2008). There, the prosecutor stated: ". . . I stand behind Sergeant Brown and the investigation that was conducted in this matter." We concluded the comment improperly vouched for the credibility of the investigation. Likewise in *Dysthe*, ¶ 30, 63 P.3d at 886, we held the prosecutor improperly vouched for the State's witnesses when he stated that he worked with the investigators and could guarantee their investigations were not arbitrary.

[¶ 43] The State asserts *Guy* and *Dysthe* are distinguishable because there the prosecutors personally vouched for the credibility of the witnesses by saying "I stand behind" them and "I guarantee" their investigations are not arbitrary while here the prosecutor did not personally vouch for anything but merely observed that the agents and officers were incredibly good at their job. The State contends the prosecutor's statements in the present case were more like the prosecutor's statement in *Burton*, 46 P.3d at 317, that the State's witnesses were "blatantly honest" which we held was not improper. We conclude otherwise. The prosecutor's comment in *Burton* referenced testimony from witnesses who had admitted to the jury that they were doing drugs. In that context, the prosecutor was not confirming as a result of his own experience that they were blatantly honest; he was pointing out that the witnesses had been forthright, something the jury itself had experienced when they heard the witnesses' testimony. In the present case, the prosecutor's comments involved his own opinion or experience of the incredible job the agents did, something the jury had not experienced and one of the very questions the jury had to resolve for itself.

When the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion: that members of the jury might be persuaded not by the evidence, but rather by the perception that counsel's opinions are correct because of their position as prosecutor. . . .

*Burton*, ¶ 34, 46 P.3d at 317–318, quoting *Lane v. State*, 12 P.3d 1057, 1065 (Wyo.2000). That the prosecutor did not preface his comments with "I guarantee," as in *Dysthe*, or "I stand behind," as in *Guy*, does not change the fact that he was asserting his belief based on his personal opinion or experience that the agents did an incredible job, thus creating the risk that the jurors would view him as an authority whose knowledge and opinions carried greater weight than their own.

[¶ 44] We turn to the question of whether the improper vouching testimony and argument denied Mr. Fennell a substantial right resulting in material prejudice. In *Dysthe*, ¶ 34, 63 P.3d at 886, we concluded the prosecutor's improper comments affected the defendant's right to a fair trial because the State's case depended entirely on the jury finding its witnesses credible. In the present case, the jury had before it evidence that: the informant and his vehicle were searched before he met with Mr. Fennell and no cocaine was found; law enforcement had the informant under visual and/or audio surveillance for most of the time before, during and after he met with Mr. Fennell; and the informant had money and no cocaine in his possession before the meeting and had cocaine and less money after the meeting. The jury also had the opportunity to weigh the credibility of not only the State's witnesses, but Mr. Fennell himself. From the evidence presented, the jury could reasonably infer Mr. Fennell delivered cocaine to the informant. We conclude the improper vouching

by itself was not so highly prejudicial as to create a reasonable probability that the outcome would have been more favorable to Mr. Fennell absent the testimony.

### c. Improper rebuttal witness.

[¶ 45] Finally, Mr. Fennell contends the prosecutor committed misconduct when he called DCI Agent Shawn Puente as a rebuttal witness. Mr. Fennell asserts the witness was improper because he did not rebut any evidence presented by the defense; rather, he simply reinforced and reiterated the evidence the State presented in its case-in-chief. The State responds that the prosecution properly called Agent Puente because Mr. Fennell testified that just before his last meeting with the informant, he changed the meeting place from the arranged location to the Family Dollar store because he was there shopping. The State contends the prosecutor sought to impeach Mr. Fennell's testimony by showing he was not at the store shopping but arrived at about the same time as the informant. Although Agent Puente did not testify as the prosecution expected, the State argues it is clear from the transcript that was the prosecution's intent and so he did nothing improper.

[¶ 46] The law is clear that the prosecution must present all of its evidence in its case in chief and is prohibited from splitting its presentation to gain an unfair advantage. *Warner v. State*, 2001 WY 67, ¶ 31, 28 P.3d 21, 30 (Wyo.2001). The purpose of calling a rebuttal witness is to rebut evidence presented by the defense, not to bolster evidence already presented.

> Rebuttal evidence is ... proper if it tends to refute or contradict the effect of the opponent's evidence. Rebuttal evidence would also be proper to explain the effect of the opponents evidence; however, it is improperly admitted if rebuttal evidence concerns issues not raised by the opponent.

*Id.,* ¶ 27, 28 P.3d at 30.

[¶ 47] The majority of Agent Puente's testimony concerned his qualifications and experience and his involvement in the first two meetings between the informant

and Mr. Fennell. That testimony merely corroborated and bolstered the testimony of the other law enforcement officials who testified in the State's case in chief. Considered alone, that portion of Agent Puente's testimony was not proper rebuttal evidence.

[¶ 48] Following that testimony, however, the prosecutor questioned the Agent about the last meeting between the informant and Mr. Fennell. That testimony also did not refute, contradict or explain the defense evidence. Rather, it tended to confirm Mr. Fennell's testimony that he was already at the Family Dollar store when the informant arrived. Agent Puente testified that the informant told law enforcement over the audio surveillance that he had received a text message telling him to go to the Family Dollar store, the Agent "thought Mr. Fennell might already be there," and he watched the informant park his vehicle next to Mr. Fennell's. He further testified as follows in response to the prosecutor's questions:

> Q. Did you see when the defendant pulled in to the Family Dollar parking lot?
>
> A. No, um—since I was keeping an eye on the confidential informant, I believe he arrived at the same time. That's, you know, within a couple of seconds of each other. I was keeping an eye on the confidential informant to ensure his safety.
>
> Q. Do you know if the defendant was already in the store?
>
> A. Over the audio I heard he was in the store, but I did not visually see that, sir.

[¶ 49] This testimony did not refute Mr. Fennell's testimony that he changed the location of the meeting because he was at the Family Dollar store shopping. The State's assertion that it was nonetheless proper because the prosecutor intended the rebuttal witness to refute Mr. Fennell's testimony is unavailing. If that was the purpose of calling the rebuttal witness, the prosecutor easily could have confirmed whether the witness would testify as expected. That the prosecutor apparently put the witness on the stand without first confirming that he would rebut Mr. Fennell's testimony does not somehow transform improper rebuttal into proper testimony. The

prosecutor transgressed a clear rule of law when he presented the rebuttal witness.

[¶ 50] The question is whether absent the transgression, Mr. Fennell likely would have obtained a more favorable result. Considering the testimony of the improper rebuttal witness alone, we conclude it did not prejudice Mr. Fennell. Agent Puente's testimony about the informant's first two meetings with Mr. Fennell added little, if anything, to what the jury had already heard in the State's case-in-chief. His testimony about the third meeting was inconsistent, at first confirming Mr. Fennell's testimony that he was at Family Dollar store when the informant arrived and then suggesting they arrived close to the same time but conceding that his focus was the informant, not Mr. Fennell. We conclude the rebuttal testimony likely had no effect one way or the other on the outcome of the trial.

### 3. Ineffective Assistance of Counsel

[¶ 51] Mr. Fennell's final contention is that his trial counsel was ineffective in failing to: challenge the testimony concerning the crime lab test results; object to the improper testimony and argument; demand notice of the State's intent to present prior bad acts evidence and object to such evidence when it was presented; and insist that the audio recordings be played for the jury in their entirety and cross-examine law enforcement concerning portions of those recordings.

[¶ 52] The following standards govern our review of this claim:

The right to effective assistance of defense counsel is guaranteed by the Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that trial counsel's performance was deficient and the deficient performance prejudiced his defense. *Osborne v. State,* 2012 WY 123, ¶ 19, 285 P.3d 248, 252 (Wyo.2012); *Ken [v. State,* 2011 WY 167], ¶ 17, 267 P.3d [567,] 574 (Wyo.2011); *Strickland v. Washington,* 466 U.S. 668, 690–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The deficiency prong requires a showing that counsel failed to render such assistance as would have been offered by a reasonably competent attorney. *Ken,* ¶ 27, 267 P.3d at 574. If the defendant establishes that counsel's performance was deficient, he must then demonstrate that he was prejudiced by showing "a reasonable probability exists that, but for counsel's deficient performance, the outcome would have been different." *Osborne,* ¶ 19, 285 P.3d at 252.

Ineffective assistance of counsel claims involve mixed questions of law and fact. *Osborne,* ¶ 17, 285 P.3d at 252. We defer to the district court's findings of fact unless they are clearly erroneous. *Strandlien v. State,* 2007 WY 66, ¶ 20, 156 P.3d 986, 992 (Wyo.2007). The district court's "conclusions of law, which include the question of whether counsel's conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct," are reviewed de novo. *Id.,* quoting *Robinson v. State,* 2003 WY 32, ¶ 16, 64 P.3d 743, 748 (Wyo.2003).

*Cooper v. State,* 2014 WY 36, ¶¶ 19–20, 319 P.3d 914, 920 (Wyo.2014). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Luftig v. State,* 2010 WY 43, ¶ 17, 228 P.3d 857, 864 (Wyo.2010), quoting *Dettloff v. State,* 2007 WY 29, ¶ 17, 152 P.3d 376, 382 (Wyo.2007).

#### a. Failure to object to or challenge lab test results.

[¶ 53] Mr. Fennell contends defense counsel's performance was deficient because he did not object to or challenge the testimony elicited concerning the drug tests and testing for fingerprints. In fact, defense counsel stipulated that the substance was cocaine. Given that the defense was focused on proving Mr. Fennell met with the informant to get the money he was owed and the informant set him up, we cannot say the stipulation was outside the range of professionally competent assistance. The fact that the substance was cocaine did not affect the defense. The evidence that no fingerprints were found on the bags was, if anything,

helpful to the defense. Counsel's performance was not deficient in this regard.

### b. Failure to object to improper testimony and argument.

[¶ 54] Mr. Fennell next asserts defense counsel's performance was deficient because he failed to object to the prosecutor's questions that prompted testimony from law enforcement amounting to an opinion that he was guilty of the crimes charged and the prosecutor's questions and comments vouching for the credibility of the State's witnesses. Mr. Fennell's defense was that he met with the informant in order to receive payment of money owed to him and the informant set him up in order to avoid having to pay the money he owed. For this defense to succeed, the jury had to believe Mr. Fennell was credible and the informant was not. Under these circumstances, defense counsel's failure to object to opinion testimony that Mr. Fennell was guilty or to testimony and comments vouching for the credibility of the State's witnesses was not sound trial strategy. Rather than bolstering Mr. Fennell's credibility, defense counsel allowed his credibility to be undermined when law enforcement testified to his guilt and vouched for the credibility of the informant and when the prosecutor vouched for the credibility of law enforcement. Under the circumstances of this case, this was not trial strategy that a reasonable attorney would have followed.

### c. Failure to demand notice of 404(b) evidence; failure to object to 404(b) evidence.

[¶ 55] Mr. Fennell contends defense counsel was ineffective in failing to file a pretrial demand for notice of intent to use 404(b) evidence. He further asserts defense counsel's performance was deficient because when evidence falling within 404(b) was presented, he did not object. Mr. Fennell is correct that defense counsel did not file a demand for notice of 404(b) evidence.

[¶ 56] During trial, defense counsel also did not object to the following exchange between the prosecutor and the informant:

Q. What was your relationship with [Mr. Fennell]?

A. Strictly I would buy drugs from him, then I knew him at the bar.

Q. So you used to buy drugs from him, knew him from the bar. Was this always your relationship with him?

A. Yes.

During the informant's testimony in response to the prosecutor's questioning concerning the transaction leading to the first charge against Mr. Fennell, defense counsel did not object to the following:

Q. ... How did you know [Mr. Fennell] would know where to go?

A. It's a location I made previous purchases from.

Defense counsel also made no objection when the following exchanges occurred between the prosecutor and Agent Moon:

Q. So tell us a bit more about this investigation.

A. I was assisting another agent. It was a—basically he had received information through a confidential informant that Mr. Fennell ... was distributing cocaine in the Cheyenne area.

. . . .

Q. [The informant], had he purchased drugs from Mr. Fennell before?

A. Yes, sir.

Defense counsel did not object to the following testimony the prosecutor elicited from Officer Wilmarth:

Q. Now, what were you doing October 3rd of 2012?

A. I was assisting DCI ... in the investigation into cocaine distribution.

Q. Tell us a little bit more about that.

A. Um, DCI had developed a confidential informant who had named [Mr.] Fennell as a distributor of cocaine in the Cheyenne area.

Finally, Defense counsel did not object when the prosecutor used the above testimony in his closing argument to say:

Law enforcement didn't pick out [the informant]. [Mr. Fennell] did. [The informant] was [Mr. Fennell's] friend. He approached law enforcement because he was

constantly buying drugs from [Mr. Fennell].

[¶ 57]  W.R.E. 404(b) states:

(b) Other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Pursuant to this provision, evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with those other acts in committing the current crime.  In the present case, evidence that Mr. Fennell previously sold illegal drugs was not admissible to prove his character was that of a drug dealer and, therefore, he committed the current crimes of delivering controlled substances.  Evidence he sold drugs on prior occasions, however, could be admitted if relevant, offered for one of the purposes identified in the Rule, such as to prove motive, opportunity or intent, and more probative than prejudicial.  *Lindstrom,* ¶ 21, 343 P.3d at 797–98.

[¶ 58]  Wyoming law is clear that the admissibility of evidence of other crimes, wrongs or acts should be tested before trial, preferably by the defendant serving a demand for notice of the State's intent to introduce such evidence, the State's identifying any such evidence, and a pretrial hearing.  *Lindstrom,* ¶ 21, 343 P.3d at 797–98, citing *Payseno v. State,* 2014 WY 108, ¶ 19, 332 P.3d 1176, 1182 (Wyo.2014) and *Gleason v. State,* 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002).  In the instant case, the State presented trial evidence that Mr. Fennell previously sold drugs without defense counsel having filed a pretrial demand for notice of such evidence, without defense counsel

objecting contemporaneously with the introduction of the evidence, and without the evidence being scrutinized by the district court prior to its admission.

[¶ 59]  We consider defense counsel's failure to request notice of 404(b) evidence and to object to such evidence at trial not through hindsight, but with the presumption that he had a strategic purpose for not requesting notice and allowing the introduction of this evidence without objection.  *Proffit v. State,* 2008 WY 114, ¶ 42, 193 P.3d 228, 243 (Wyo.2008), citing *Page v. State,* 2003 WY 23, ¶ 8, 63 P.3d 904, 908 (Wyo.2003).  However, noting "the clarity with which the 'problem' has been articulated by this Court," we have held that defense counsel's failure to pursue discovery or to demand notice of prior crimes evidence may constitute ineffective assistance of counsel.  *Proffit, id.,* citing *Williams v. State,* 2004 WY 117, ¶ 12 n. 9, 99 P.3d 432, 440 n. 9 (Wyo.2004).

[¶ 60]  We conclude that in failing to demand notice of 404(b) evidence, request a pre-trial hearing to determine its admissibility, enter an objection to the testimony and request an instruction telling the jury to disregard it, defense counsel failed to render such assistance as would have been offered by a reasonably competent attorney.  We said in *Proffit,* that "we cannot conceive of a reasonable attorney forfeiting the opportunity to prevent the jury from hearing evidence of his client's prior crimes, wrongs or acts."  We similarly cannot conceive of a reasonable attorney forfeiting the opportunity to prevent the jury from hearing that his client, who professed his innocence to the crimes of delivery of cocaine, was a drug dealer.

d.  **Failure to request that audio tapes be played in their entirety; failure to cross-examine law enforcement concerning them.**

[¶ 61]  Mr. Fennell's final assertion that his counsel performed deficiently involves the audio tapes of the controlled buys.  Defense counsel stipulated to the prosecution playing very brief portions of the tapes for the jury.  Mr. Fennell contends that had defense counsel insisted the tapes be played in their entirety, they could have been used

to diffuse the State's claim that the informant was under constant surveillance and could not, therefore, have acquired the cocaine he claimed to have gotten from Mr. Fennell somewhere else. Mr. Fennell points to various places on the tapes that suggest law enforcement did not have constant visual surveillance.

[¶ 62] Throughout the trial, the prosecutor repeatedly emphasized that the informant was never out of law enforcement's sight or hearing. In opening statement, he told the jury:

- "[T]hey surveilled him the entire time. [He] was never out of law enforcement's sight; again protecting the integrity of their investigation."

- "They observe this the entire time.... [He's] being watched the entire time."

- "He's followed the entire time. Agents constantly have their eyes on him."

[¶ 63] On direct examination of Agent Brock, the prosecutor asked, "Was he ever out of your sight?" Agent Brock answered, "No." On direct examination of Agent Moon, the prosecutor asked, "So were you able to watch him the entire time?" and Agent Moon responded that the informant was visible to agents the entire time.

[¶ 64] In closing argument, the prosecutor told the jury:

- "The big thing is [the informant] was never out of their sight. He was constantly under surveillance. It might not have been from one person, but they acted as a team, multiple people in the team, constantly keeping their eye on him. He was never out of sight."

- "Constantly under surveillance. He didn't stop anywhere. He was always in their sight."

- "They knew he was leaving because they constantly had their eyes on him. He was never out of their sight."

[¶ 65] Had the tapes been played in their entirety, there were questions that could have been asked about the accuracy of the assertions that the informant was under constant surveillance. On the audio tape of the first meeting, the informant advises law enforcement when Mr. Fennell arrives and,

after the meeting, that he (the informant) is headed back. During the second meeting, before Mr. Fennell arrives, the informant's seat belt beeps as if it has been unbuckled and then there is a crunching noise that sounds like footsteps on gravel. This is followed by a phone call from law enforcement asking the informant whether he is still sitting in his car. The agent states that he thought he heard the informant getting out of the vehicle. The informant denies having gotten out of his car, saying that he had only rolled the passenger window down. After meeting with Mr. Fennell, the informant can be heard advising law enforcement that he is on Ridge Road turning onto Pershing heading east.

[¶ 66] These portions of the tapes could have been used to suggest that law enforcement did not have the informant under constant surveillance and that, before the second meeting, the informant got out of his vehicle for some unknown purpose and lied to law enforcement about it. Given that the defense strategy appears to have consisted of the hope that the jury would believe Mr. Fennell, it was particularly important for defense counsel to weaken the State's case and the credibility of its witnesses at every available opportunity. We conclude defense counsel's performance was deficient because he failed to do so by allowing only limited portions of the tapes to be played for the jury.

[¶ 67] We turn to the question whether Mr. Fennell has demonstrated that he was prejudiced by showing a reasonable probability exists that, but for counsel's deficient performance, the outcome would have been different. Claims of ineffective assistance of counsel most often succeed where cumulative error is so egregious as to compel the conclusion that in the entire context of the trial the defendant was denied the right to a fair trial. *Dickeson v. State*, 843 P.2d 606, 612 (Wyo.1992), citing *Gist v. State*, 737 P.2d 336, 342 (Wyo.1987). The cumulative effect in the present case of defense counsel's failure to object to the improper testimony and comments, demand notice of and object to 404(b) evidence and use the audio tapes in

their entirety to weaken the State's case is that Mr. Fennell was denied the right to a fair trial. Had the jury heard the tapes in their entirety and learned from defense counsel's cross examination that the prosecutor's representations of the informant being under constant surveillance were not true and had the jury not heard repeatedly that Mr. Fennell was a drug dealer, how incredibly well law enforcement did its job and that the agents involved believed he was guilty, a reasonable probability exists that it would have believed Mr. Fennell's testimony that he was set up.

[¶ 68] Reversed and remanded for a new trial.