2012 WY 109

**Gary Lee CARTER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–11–0298.

Supreme Court of Wyoming.

Aug. 9, 2012.

---

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument presented by Mr. Morgan.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Prosecution Assistance Program; Joshua Beau Taylor, Student Director; and Richard E. McKinnon, Student Intern. Argument presented by McKinnon.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1]   Gary Lee Carter was tried and convicted by a jury of a single felony charge of possessing, with intent to deliver, two grams of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031. The court sentenced Carter to twelve to fifteen years in the Wyoming State Penitentiary. On appeal, Carter contends that plain error occurred when the prosecutor elicited expert witness testimony that Carter was guilty of being a drug dealer. Also, Carter alleges that the prosecutor committed misconduct when arguing facts not in evidence during closing argument. We reverse.

## ISSUES

[¶ 2]   Carter states two issues for our consideration:

Plain error occurred when the prosecutor elicited expert witness testimony that Carter was guilty of being a drug dealer.

The prosecutor committed misconduct when he argued facts not in evidence in closing argument.

## FACTS

[¶ 3]   The Rock Springs Police Department's Street Crimes Unit began investigating Carter after receiving tips that he was dealing drugs. During that investigation, "short stay traffic," a common sign of drug trafficking, was observed at Carter's residence, and officers obtained a search warrant based upon that information. On January 11, 2011 officers executed the warrant after stopping Carter as he approached his home. Carter carried $75.00 in his hand and told the officer, "The dope is in my pocket." As indicated, the officer found a soft case in Carter's pocket that contained two grams of methamphetamine, a digital scale disguised as an iPod, empty baggies, and a pipe. Carter also divulged that "everything you are looking for [in the house] would be around my chair."

[¶ 4]   While searching Carter's home, the officers found video surveillance equipment, a portable police scanner, more zip lock style plastic bags, another digital scale, and several notebooks. The notebooks contained pay/ owe sheets, a "to do" list with an entry stating "sell dope." Another notepad listed police radio codes that would likely be heard on the police scanner.

[¶ 5]   After being originally charged with four crimes and pleading not guilty to all four, the State announced before trial that it would dismiss the three misdemeanor charges and proceed to trial only on the felony charge.

[¶ 6]   During trial, the State qualified Daniel Allison, a special agent for the Wyoming Division of Criminal Investigation (DCI), as an expert in drug trafficking investigations. Agent Allison testified based upon

his expertise. On redirect the State questioned Agent Allison:

STATE: [Mr. Carter] had two grams [of methamphetamine], he had that small pipe in that kit with plastic bags ... This is that small pipe and this was the bag that had the methamphetamine in it and a supply of plastic bags ... That was on his person. And it still has the methamphetamine and it has the digital scale that is concealed as an MP3 player. Then inside his residence he had additional plastic baggies, another digital scale, he had the surveillance set up and police scanners with a list of police radio codes. What would you as an expert conclude from that as to whether or not he is simply a user or whether he might be a dealer?

AGENT ALLISON: The totality of the circumstances is what I would have to base any decision on when I'm looking at a circumstance like this. With pay/owe sheets and profit and loss statements or sheets, scales, packaging material, surveillance equipment, I would find that indicative of a drug dealer.

STATE: ... Is there any doubt in your mind?

AGENT ALLISON: No.

No objection was made by defense counsel, and the State also emphasized the testimony in closing.

[¶ 7] The second alleged error was also made during closing. To put the offending comment into context, before the State had rested its case and in the presence of the jury, the prosecutor informed the court that before the State could admit an exhibit into evidence, the State had to excise two pages from one of Carter's notebooks. Again, in front of the jury, the prosecutor questioned how the court would like to handle that, "because there is potentially prejudicial information." The court then suggested that counsel approach the bench, at which point a discussion was held regarding removing two pages from the notebook before introducing it into evidence. After the pages were removed, the State presented the notebook to a witness and asked, "[n]ow, I believe you are aware that other than a small excision or taking out a couple pages of one of the

notebooks, do those appear to be the same condition in which they were recovered?" The notebooks, and the excision, were referenced as follows in closing:

Now, one of the points the defense tried to get to was, oh, these notebooks look old, don't they, so maybe this was not written the day before. Maybe this was written concerning other dope being sold. I don't know what they'll argue, but remember the rest of the testimony about the notebooks. The pages we unfortunately had to take out relate to a date that was only three days prior to his arrest. So there are contemporaneous notes. These are things that are occurring at that time. These things weren't just sitting there from last year, the year before or even six years before. They are from right then.

[¶ 8] Carter was then found guilty of the crime charged against him and was thereafter sentenced on June 28, 2011 to not less than twelve nor more than 15 years. This appeal followed.

## DISCUSSION

[¶ 9] First, we consider Carter's argument that plain error occurred when the prosecutor elicited expert testimony that Carter was guilty of being a drug dealer. Because Carter did not object below, this Court applies a plain error standard of review when considering whether the province of the jury was invaded at trial. *Kramer v. State*, 2012 WY 69, ¶ 7, 277 P.3d 88, 89 (Wyo.2012). To establish plain error, Carter must show three things: 1) The record is clear about the incident alleged as error; 2) that there was a transgression of a clear and unequivocal rule of law; and 3) that he was denied a substantial right and was materially prejudiced. *Id.*

[¶ 10] The first prong of our plain error analysis is clearly met as the record reflects the exchange between the State and its expert, which we repeat below:

STATE: [Mr. Carter] had two grams [of methamphetamine], he had that small pipe in that kit with plastic bags ... This is that small pipe and this was the bag that had the methamphetamine in it and a sup-

ply of plastic bags ... That was on his person. And it still has the methamphetamine and it has the digital scale that is concealed as an MP3 player. Then inside his residence he had additional plastic baggies, another digital scale, he had the surveillance set up and police scanners with a list of police radio codes. What would you as an expert conclude from that as to whether or not he is simply a user or whether he might be a dealer?

AGENT ALLISON: The totality of the circumstances is what I would have to base any decision on when I'm looking at a circumstance like this. With pay/owe sheets and profit and loss statements or sheets, scales, packaging material, surveillance equipment, I would find that indicative of a drug dealer.

STATE: Is there any doubt in your mind?
AGENT ALLISON: No.

[¶ 11] This Court's rule is well established: A witness, lay or expert, may not express an opinion as to the guilt of the accused. *Ogden v. State*, 2001 WY 109, ¶ 21, 34 P.3d 271, 276 (Wyo.2001); *Whiteplume v. State*, 841 P.2d 1332, 1338 (Wyo.1992); *Bennett v. State*, 794 P.2d 879, 881 (Wyo.1990); *Stephens v. State*, 774 P.2d 60, 66 (Wyo.1989). Regarding opinion testimony, we have stated in looking at similar testimony that it is "the jury's role, not the witness's, to make this determination." *Bennett*, 794 P.2d at 882. Furthermore, we have stated that "[t]estimony need not be excluded unless it contains 'an actual conclusion about the guilt or innocence of the accused party.'" *Ogden*, ¶ 23, 34 P.3d at 277. Indeed, as the State points out under W.R.E. 702, expert witnesses may offer opinions that will assist the trier of fact in understanding or determining the facts at issue in a particular case. This testimony is not improper or inadmissible simply "because it embraces an ultimate issue to be decided by the trier of fact." W.R.E. 704.

[¶ 12] To better illustrate its point, the State points this Court to *Cureton v. State*, 2007 WY 168, ¶ 8, 169 P.3d 549, 551 (Wyo. 2007), where an officer opined that several facts in the case suggested that methamphetamine was being sold rather than held for personal use. There, we found the testimony

did not convey an opinion or conclusion about whether the defendant was a drug dealer but merely informed the jury about the meaning and the significance of the evidence presented. *Id.,* ¶ 11, 169 P.3d at 551. We cannot conclude the same in the instant case.

[¶ 13] When reviewing the testimony, the opinion given by Agent Allison was highly prejudicial. Unlike *Cureton*, this case was not based upon a wired buy or a confidential informant. Instead, this case was based entirely upon the evidence found and the parties' different interpretations of the same. By asking the question during its redirect, the State's error was exacerbated when it emphasized the testimony during closing: "... as Agent Allison said, when you look at the totality of the circumstances, it's very clear."

[¶ 14] Rather than comparing this case to *Cureton*, we find this case to be more analogous to *Bennett, supra*. There, we found reversible error after a DCI agent gave his opinion that the defendant was a drug dealer by linking facts from his investigation to his conclusion. This testimony went "well beyond simply summarizing the facts of his investigation by drawing the ultimate conclusion that Bennett was guilty." *Id.,* 794 P.2d at 882. The same rings true in this case. We have never before allowed a witness to testify as to a defendant's guilt or innocence and will not begin to do so now. Plain error occurred in this instance.

### Prosecutorial Misconduct

[¶ 15] In his second and final argument Carter asserts that the prosecutor here committed misconduct when he, in the presence of the jury, informed the court that before the State could admit an exhibit into evidence, two pages from a notebook had to be excised "because there is potentially prejudicial information." After the pages were removed and the exhibit was presented to a witness during questioning and then during closing, the State referenced the notebooks to the jury as follows:

Now, one of the points the defense tried to get to was, oh, these notebooks look old, don't they, so maybe this was not written

the day before. Maybe this was written concerning other dope being sold ... but remember the rest of the testimony about the notebooks. The pages we unfortunately had to take out relate to a date that was only three days prior to his arrest. So there are contemporaneous notes. These are things that are occurring at that time. These things weren't just sitting there from last year, the year before or even six years before. They are from right then.

[¶ 16] When reviewing claims of prosecutorial misconduct, we consistently focus on whether the error affected the accused's substantial rights.

Before we hold that an error has affected an accused's substantial right, thus requiring reversal of a conviction, we must conclude that, based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused.

*Cooper v. State,* 2008 WY 5, ¶ 18, 174 P.3d 726, 730 (Wyo.2008). Because there was no objection at trial to the prosecutor's statement, a plain error analysis applies once again as outlined above. We further recognize that this Court is reluctant to find plain error in closing argument. *James v. State,* 888 P.2d 200, 207 (Wyo.1994).

[¶ 17] Beginning with the first prong of the plain error analysis, the record clearly shows the alleged violation. Second, this Court has held that while counsel is allowed great latitude in the argument of cases, argument must be kept within the evidence. *Dice v. State,* 825 P.2d 379, 384 (Wyo.1992). Third and finally, this Court must consider whether the prosecutor's comments adversely affected Carter's substantial right to a fair

trial and whether the comments materially prejudiced him.

[¶ 18] After looking at the record as a whole, we conclude that when considered in conjunction with the expert witness testimony discussed above, the troublesome comments made during closing present a reasonable probability that Carter's right to a fair trial was affected. The information, while subtle, came directly from the prosecutor and did more than insinuate. This Court fully recognizes the potential prejudice to a defendant when a prosecutor refers to facts outside the record and "arises because the prosecutor has effectively assumed the role of an unsworn witness, lending the dignity and prestige of his office to the State's case." *Montoya v. State,* 971 P.2d 134, 137 (Wyo. 1998) (internal citation omitted). That it was pointed out during witness testimony and then again during closing brings serious doubt as to whether or not Carter received a fair trial. We conclude that he did not and should be granted a new trial. *See Condra v. State,* 2004 WY 131, ¶ 23, 100 P.3d 386, 392 (Wyo.2004).

## CONCLUSION

[¶ 19] We reverse Carter's conviction and remand this case for a new trial. Based upon an expert witness improperly testifying as to his opinion on Carter's guilt and the prosecutor arguing facts not in evidence during closing, we cannot say with confidence that Carter received a fair trial.