# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 34

### OCTOBER TERM, A.D. 2019

March 6, 2020

ROGER KEITH BLACK,

Appellant
(Defendant),

v.

S-19-0118

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
The Honorable William J. Edelman, Judge

*Representing Appellant:*

Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General. Argument by Mr. Zintak.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Roger Keith Black sent a threatening letter to a witness subpoenaed to testify at his drug trial.  A jury convicted him of intimidating and influencing a witness in violation of Wyo. Stat. Ann. § 6-5-305(a) (LexisNexis 2019).  Mr. Black contends the prosecutor committed misconduct during rebuttal closing argument by improperly shifting the burden of proof to him and stating facts not in evidence.  He also claims the district court erred in failing to instruct the jury on the *mens rea* element of § 6-5-305(a), specifically, that it had to find he acted voluntarily.  We affirm.

## ISSUES

[¶2]    Mr. Black raises two issues, which we restate as follows:

1.    Did the prosecutor commit plain error during rebuttal closing argument by improperly shifting the burden of proof to Mr. Black or stating facts not in evidence?

2.    Did the district court plainly err in failing to instruct the jury that it had to find he acted voluntarily?

## FACTS

[¶3]    In late August 2017, Tabitha Charles began working as a confidential informant for the Wyoming Division of Criminal Investigation (DCI).  In that role, she made several controlled purchases of methamphetamine from Mr. Black.  Mr. Black was criminally charged for that conduct and housed in the Sheridan County Detention Center pending trial.  Ms. Charles was subpoenaed to testify as a witness at the trial.

[¶4]    At the time Ms. Charles made the controlled purchases from Mr. Black, she was living with, among others, Jason Bohm and his father, William Bohm, at 248 South Carlin Street in Sheridan.  By April 11, 2018, she had moved out of that residence and was living elsewhere.  On that date, Jason Bohm gave her an envelope his father had found attached to the mailbox at the South Carlin address.  The envelope was sealed and had "Tabitha Charles" and "4/10/18" handwritten in pen on its front.  It did not contain postage.  Inside the envelope was a letter stating:

> YOU HAVE ONE WEEK TO LEAVE AND NOT COME BACK YOU FUCKING RAT BITCH!  DON'T THINK D.C.I. CAN HELP; THEY CAN'T!  YOU BETTER TAKE THIS BREAK, YOU WON'T GET ANOTHER.  IF YOU DON'T LEAVE, YOUR' MOM AND DAUGHTER WILL PAY THE PRICE FOR YOUR RAT BITCH ASS.  WE KNOW WHERE THEY ARE AT ALL TIMES; YOU TOO

1

BITCH! WE WILL GET MOM, THEN YOUR DAUGHTER; LIVE WITH THAT YOU FUCKING RAT! THEN YOU! DON'T TRY US YOU RAT BITCH! YOU HAVE ONE WEEK.

(Errors in original). Upon reading the letter, Ms. Charles became "really upset" and "scared." She gave the letter to DCI.

[¶5]     The State charged Mr. Black with intimidating or influencing a witness in violation of § 6-5-305(a). At trial, Terry Dieleman testified he met Mr. Black while they were housed in the same pod at the detention center. About the time Mr. Dieleman was to be released from the center, Mr. Black asked him to drop off a letter at a house on South Carlin Street. Mr. Dieleman agreed, and Mr. Black provided him a sealed envelope. The envelope had "Tabitha Charles" written on the front. Mr. Dieleman placed the letter with his legal paperwork so it would not be searched by detention center staff upon his release. Mr. Dieleman was released on April 8, 2018. Two days later, he delivered the letter to the South Carlin address, placing it on two hooks on the mailbox. Before delivering it, he wrote "4/10/18" on the front of the envelope because Mr. Black had instructed him to write the date he delivered it. The next day, Mr. Black called Mr. Dieleman from the detention center. Mr. Dieleman told Mr. Black "[e]verything is good here." Mr. Black then asked, "That's a thumbs up then?" Mr. Dieleman took this question as Mr. Black's approval that the letter had been delivered.

[¶6]     Linda Bradford was charged with delivery of a controlled substance after giving Ms. Charles pain pills (oxycodone) and marijuana. She and Mr. Black made their initial appearances in their criminal cases at the same time on October 30, 2017. She testified that at their initial appearances, Mr. Black told her, "I'm going to get [Tabitha]." Mr. Black's body language indicated he was mad and angry.

[¶7]     Sharon Johnson, Ms. Charles' mother, testified Mr. Black called her four times from the detention center between November 8 and 26, 2017. In those calls, Mr. Black told Ms. Johnson that Ms. Charles "did this to me"; Ms. Johnson needed to talk to Ms. Charles because "she's about to send me to prison for the rest of my fucking life, for no reason"; "she needs to retract"; and he was not "playing around" as they were "talking about his life here." Ms. Johnson told the jury that she interpreted these calls as Mr. Black asking her "to talk to [Ms. Charles] and tell her that she basically needed to recant . . . ."

[¶8]     Ms. Johnson also testified that in March 2018, she received a letter from Mr. Black in the mail. Mr. Black told her, among other things, that he did "not hold anything against [Ms. Johnson] for what Tab is doing"; "[Tab] got into some trouble & started working for the D.C.I[.]"; and although "Tab has problems & issues, . . . that doesn't give her the right to ruin other peoples['] lives because she doesn't want to deal with her own problems." Ms. Johnson turned the letter over to DCI and changed her phone number.

2

[¶9]   Mr. Black made several phone calls from the detention center to Wayne Finch in November 2017 and to Andrew Price in early April 2018.  Mr. Black told Mr. Finch that Ms. Charles had "set him up" and asked Mr. Price to find out "why" she was "doing this" to him when he could go to prison for the rest of his life.  He asked Mr. Price for assistance in determining where Ms. Charles was living.  Because these phone calls, as well as those to Mr. Dieleman and Ms. Johnson, were made from the detention center, they were recorded.  The State played them for the jury at trial.

[¶10]   Joshua Meyers, who had been housed in the same pod as Mr. Black for a few days in August 2018, testified he saw Mr. Black looking out the window at the detention center.  Mr. Black pointed to Ms. Charles, who was walking down the street, and asked Mr. Meyers if he knew "Tabitha."  Mr. Meyers knew Ms. Charles but told Mr. Black he did not.  Mr. Black told Mr. Meyers, "he'd been watching Tabitha walk up and down the streets" and she "better watch her back" as "[s]he's going to get hers" "[i]n due time."  After his release from the detention center, Mr. Meyers warned Ms. Charles about what Mr. Black had said.

[¶11]   Christine Reed, a questioned document examiner, testified she compared the threat letter with writing samples known to have been written by Mr. Black and Mr. Dieleman.  She opined it was "highly probable" Mr. Black had written the letter.

[¶12]   The jury found Mr. Black guilty of both attempting to intimidate and attempting to influence a witness and the district court sentenced him to 8-10 years in prison.  Mr. Black appealed.

## DISCUSSION

*1.      Did the prosecutor commit plain error during rebuttal closing argument by improperly shifting the burden of proof to Mr. Black or stating facts not in evidence?*

[¶13]   Ms. Reed described for the jury the methodology she uses to conduct a questioned documents examination:

> Well, the first thing I do is I take the questioned document or documents and look at them rather closely trying to detect certain patterns and unusual letter formation, where someone doesn't write everything on the baseline which is the lines on the paper or they make punctuation different or letters different than what you would normally see a person make . . . . And then I look at the known sample to see if any of those type of things appear in the known. . . .  And  then  I  . . . basically go through and pick out all of those similarities.  And

if there are a lot of similarities with not a lot of dissimilarities, then I make my opinion.

[¶14]  After performing that analysis in this case, comparing the letter to the samples known to have been written by Mr. Black and Mr. Dieleman, Ms. Reed opined it was "highly probable" Mr. Black authored the letter.  The only reason she could not definitively say Mr. Black wrote the letter was because the letter was written in all upper-case letters and the known samples contained both upper- and lower-case letters.  During cross-examination, defense counsel questioned Ms. Reed's failure to analyze the envelope or to otherwise use it in forming her opinion.

[¶15]  During closing argument, defense counsel suggested to the jury that the phone calls it heard between Mr. Black and others did not convey threats but rather were those of "an innocent man . . . reaching out to someone in hopes of bettering his situation."  He also criticized Ms. Reed's analysis and opinion, emphasizing her failure to examine the envelope and to explain what she meant by it being "highly probable" that Mr. Black wrote the letter.  He told the jury:

> What would have happened in this case if she had examined that envelope and concluded that somebody else put the address on it?  We don't know.  We don't know what criteria she used.  When she explained how she did this, she said, "Well, I look at the known source and I look at the unknown source and I try and find some similarities and check the differences and then I decide."  Well, we don't know what similarities or what differences she found.  Maybe you folks in the jury room can practice being questioned document examiners and see what similarities and differences you can see in those writings.  And maybe include the address, the name "Tabitha Charles" on the envelope in your evaluation too.  We don't have any details about any numbers.  "I found ten similarities."  ["]I found three differences."
>
> And you can read in the instructions that Mr. Black is innocent and it's the State's burden to prove the case beyond a reasonable doubt.  And so it's not Mr. Black's responsibility to prove that her conclusion is irrational, wrong, didn't consider all the factors that should have gone into it, sloppy, whatever description you want to use.
>      . . .
> [T]he fact that she didn't do a better job on this case is not the fault of Roger Black.  I guess it's her fault.

4

[¶16] Finally, he emphasized the lack of fingerprints, DNA evidence or "real scientific evidence" tying the letter to Mr. Black but rather

> just some testimony by -- I hesitate -- some sketchy witnesses that are involved in primarily a low-level drug use and trafficking. . . . I think that the science of questioned documents examination, I suggest that that's a pseudo science and it's very malleable, it's very changeable, it is whatever you want it to be, and I suggest that you talk about that a little bit and reach some conclusions on how valuable that evidence is in your deliberations and also considering how valuable her providing more details or doing a more thorough job, how more information might be useful to you in reaching a verdict in this case. I suggest her opinion isn't a fully-considered opinion, that it leaves the jury to speculate a lot regarding the things she testified about and suggests reasonable doubt as to Mr. Black's guilt in this case.

[¶17] In rebuttal, the prosecutor responded:

> Ladies and gentlemen, with the exception of her choice not to examine the writing on the envelope but rather to focus on the numbers on the envelope, the criticisms that defense counsel raised, he raised with you. *He didn't raise any of them with Christine Reed. Christine Reed could have talked to him about the very same issues that he raised. What were the similarities? Were there any similarities? Did you see anything that suggested this? Did you see -- what were the things that you were looking for? But he never asked those things. Smart move on his part because Christine Reed would have explained that to him, but he chose not to.*

[¶18] Mr. Black argues these comments constituted prosecutorial misconduct because they improperly shifted the burden of proof to him and argued facts not in evidence. He concedes plain error review applies because he did not object to the prosecutor's comments at trial. *Dixon v. State*, 2019 WY 37, ¶ 39, 438 P.3d 216, 231 (Wyo. 2019). *See also, Mraz v. State*, 2016 WY 85, ¶ 55, 378 P.3d 280, 293 (Wyo. 2016). To satisfy the plain error standard, Mr. Black must show "1) the record is clear about the incident alleged as error; 2) violation of a clear and unequivocal rule of law; and 3) that [he] was denied a substantial right resulting in material prejudice." *Mraz*, ¶ 55, 378 P.3d at 293 (citing *Butler v. State*, 2015 WY 119, ¶ 16, 358 P.3d 1259, 1264 (Wyo. 2015)). In conducting this review, we are mindful of our "reluctan[ce] to find plain error in closing arguments lest the trial court

5

becomes required to control argument because opposing counsel does not object." *Trujillo v. State*, 2002 WY 51, ¶ 4, 44 P.3d 22, 24 (Wyo. 2002) (quotations omitted).

[¶19]  The first prong of plain error review is satisfied because the allegedly improper comments clearly appear in the record.  We therefore turn to the second and third prongs. We will address each of Mr. Black's arguments separately, starting with whether the prosecutor's comments improperly shifted the burden of proof.

### *Shifted the Burden of Proof*

[¶20]  Mr. Black argues the prosecutor, by asserting he could have and should have cross-examined Ms. Reed to explain missing facts or information in her analysis, improperly shifted the burden of proof to him.  He claims it is "well settled that 'the State bears the burden of proof in a criminal case, and that the prosecutor may not, during argument, attempt to shift that burden to the defendant.'"  *See Hamilton v. State*, 2017 WY 72, ¶ 17, 396 P.3d 1009, 1015 (Wyo. 2017) (quoting *Harris v. State*, 2008 WY 23, ¶ 17, 177 P.3d 1166, 1171 (Wyo. 2008)).

[¶21]  The State acknowledges this general legal principle but claims the prosecutor's comments must be taken in context.  The comments were made in response to defense counsel's closing argument in which he pointed out the State's failure to elicit from Ms. Reed the similarities and differences she found between the known handwriting samples and the letter.  According to the State, this argument "opened the door" to the State's response that Mr. Black could have cross-examined her on those details.  The State also relies on cases from other jurisdictions which have found it proper for a prosecutor to comment on a defendant's failure to cross-examine a witness so long as it does not implicate the defendant's Fifth Amendment right not to testify, *see, e.g., United States v. Hooker*, 541 F.2d 300, 307 (1st Cir. 1976); *Hall v. United States*, 46 F.3d 855, 858 (8th Cir. 1995), or if the defendant's closing argument "invited" the prosecutor's comments (invited response doctrine).  *See, e.g., State v. Manning*, 885 So.2d 1044, 1107-08 (La. 2004).  Under either approach, the State tells us the prosecutor's comments in this case did not rise to the level of prosecutorial misconduct because they did not implicate Mr. Black's right not to testify and were "invited" by Mr. Black's closing argument criticizing the validity of Ms. Reed's opinion.  The State concedes, however, that at least two jurisdictions have found a prosecutor's comments concerning a defendant's failure to cross-examine a witness to be inappropriate under any circumstance.  *State v. Hearns*, 855 A.2d 549, 554-57 (N.H. 2004); *State v. Banks*, No. 86AP-1009, 1987 WL 16801, *6 (Ohio Ct. App. Sept. 10, 1987).

[¶22]  In a criminal case, the State bears the burden to prove the defendant is guilty; a defendant has no burden to prove his innocence. *Lane v. State*, 12 P.3d 1057, 1066 (Wyo. 2000) ("[A] basic premise in our criminal law is that the burden of proof rests upon the state and never shifts.") (citing *Harper v. State*, 970 P.2d 400, 405 (Wyo. 1998)).  Mr.

Black, therefore, is correct that it is improper for a prosecutor to attempt to shift the burden of proof to the defendant during closing argument. *See Hamilton*, ¶ 17, 396 P.3d at 1015 (quoting *Harris*, ¶ 17, 177 P.3d at 1171). We disagree, however, that the prosecutor's comments concerning Mr. Black's failure to cross-examine Ms. Reed "clearly violated [that] rule of law." *Harris*, ¶ 16, 396 P.3d at 1171.

[¶23] "Prosecutorial misconduct is a prosecutor's improper or illegal act (or failure to act), esp[ecially] involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Watts v. State*, 2016 WY 40, ¶ 8, 370 P.3d 104, 107 (Wyo. 2016) (quoting *Craft v. State*, 2013 WY 41, ¶ 13, 298 P.3d 825, 829 (Wyo. 2013)). "In analyzing claims of prosecutorial misconduct, we consider the prosecutor's argument in the context in which it was made and with regard to the evidence produced at trial." *Montoya v. State*, 971 P.2d 134, 136 (Wyo. 1998) (citing *Taul v. State*, 862 P.2d 649, 659 (Wyo. 1993)).

[¶24] In this case, defense counsel's closing argument criticized the reliability of Ms. Reed's opinion that it was "highly probable" Mr. Black had written the letter. Counsel's criticism included that she did not tell the jury the nature or number of similarities and differences she found to reach her opinion. In response, the prosecutor argued defense counsel could have asked her to explain those details. We have not explicitly addressed whether a prosecutor may comment on a defendant's failure to cross-examine a witness to rebut a claim by defendant in closing argument that the State did not elicit certain information from that witness. We certainly have no case law holding such comments to constitute improper burden shifting. Mr. Black urges the *Hamilton* case and the cases cited therein establish a clear rule prohibiting the prosecutor's statements. We disagree.

[¶25] Mr. Hamilton was convicted by a jury of several counts of sexual assault and sexual abuse of a minor for acts involving two victims. *Hamilton*, ¶ 1, 396 P.3d at 1010. During closing argument, the prosecutor argued Mr. Hamilton had no "reasonable explanation [or argument]" and could not "explain . . . in any reasonable manner" how one of the victims knew his semen was on her stomach and, without "a reasonable explanation," there is no reasonable doubt. *Id.*, ¶ 15, 396 P.3d at 1014-15 (emphasis omitted). Mr. Hamilton argued these comments rose to the level of prosecutorial misconduct because they improperly shifted the burden of proof to him. *Id.*, ¶ 15, 396 P.3d at 1014. Because he did not contemporaneously object to the comments, we reviewed them for plain error. *Id.*, ¶ 7, 396 P.3d at 1011. Reviewing our precedent, we concluded "the law in Wyoming is clearly established [that] a prosecutor may not argue that the defendant should have put on evidence to explain a missing fact or theory because such an argument improperly shifts the burden of proof to the defendant." *Id.*, ¶ 17, 396 P.3d at 1015. We decided the prosecutor's remarks violated this clear rule of law because they went beyond merely commenting on the evidence presented, the lack of Mr. Hamilton's evidence, or the uncontroverted evidence. *Id.*, ¶ 18, 396 P.3d at 1015. Rather, they "suggest[ed] that Mr. Hamilton had to explain the evidence when he had no burden at all." *Id.*

[¶26] In reaching this conclusion, we relied on *Schafer v. State*, 2008 WY 149, 197 P.3d 1247 (Wyo. 2008), and *Seymore v. State*, 2007 WY 32, 152 P.3d 401 (Wyo. 2007). In *Schafer*, the prosecutor stated, "if there was some explanation for it, [the defendant] could have put it on." *Schafer*, ¶ 25, 197 P.3d at 1252. The defendant objected and the district court admonished the prosecutor, struck the statement, and instructed the jury that Mr. Schafer had no burden to present any evidence in the case and it should disregard the statement. *Id.* We concluded "[i]t is well known that this Court views as an error any suggestions by the prosecution that the defense carries the burden of proof" but we also presumed the jury followed the district court's curative instruction. *Id.*, ¶ 26, 197 P.3d at 1252. As a result, we found no abuse of discretion in the denial of Mr. Schafer's motion for new trial based on the prosecutor's statement. *Id.*

[¶27] In *Seymore*, the prosecutor told the potential jurors during voir dire: "If the defense has evidence they want you to consider in deciding this case, then they should put it to you. They should bring it to your attention. They should bring it to court and show it to you, or have someone testify about it, that it's not the State's role to present that evidence to you." *Seymore*, ¶ 18, 152 P.3d at 408. Later, during closing argument, the prosecutor used a demonstrative exhibit depicting the evidence the prosecutor believed the defendant should have brought before the jury. *Id.* We concluded such statements and exhibit, by indicating the defendant had a duty to introduce exculpatory evidence, improperly shifted the burden of proof to the defendant. *Id.*

[¶28] *Hamilton*, *Schafer* and *Seymore* are inapposite to this case. They involved a prosecutor's comments during closing argument (and voir dire) which suggested the defendant had the duty to put on evidence or to offer an "explanation" for the State's evidence. In this case, the prosecutor's comments did neither. They merely observed defense counsel could have questioned Ms. Reed on the specific facts underlying her opinion but did not. Because Mr. Black has failed to cite "any Wyoming case establishing a clear-cut rule of law" that the prosecutor's comments amounted to improper burden-shifting, he has not shown they transgressed a clear and unequivocal rule of law. *Causey v. State*, 2009 WY 111, ¶¶ 14, 20, 215 P.3d 287, 292-94 (Wyo. 2009) (concluding the defendant failed to show the district court's failure to instruct the jury on the legal definition of provocation to be "an obvious transgression of any clear and unequivocal rule of law" because he failed to cite "any Wyoming case establishing a clear-cut rule of law that the jury must be instructed on a specialized legal definition of provocation").

[¶29] The prosecutor's comments were also not prejudicial. To establish prejudice under plain error review, the defendant must show "a reasonable probability that the result would have been more favorable to [him] had the error not occurred." *Larkins*, ¶ 94, 429 P.3d at 50 (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81, 124 S.Ct. 2333, 2339, 159 L.Ed.2d 157 (2004)).

8

[¶30] The prosecutor's comments were brief and made in rebuttal closing argument in a case where the evidence of guilt was overwhelming. Mr. Black was criminally charged after selling drugs to Ms. Charles. She was named as a witness at the trial on those charges. Ms. Bradford testified Mr. Black told her he was going to "get" Tabitha, and Mr. Meyers told the jury Mr. Black told him Ms. Charles "better watch out." The jury heard several recorded telephone conversations in which Mr. Black asked Mr. Finch and Mr. Price for assistance in locating Ms. Charles and finding out why she was "doing this" to him. It also heard several telephone calls Mr. Black made to Ms. Johnson, blaming Ms. Charles for his situation and wanting Ms. Johnson to talk with Ms. Charles and urge her to recant. Mr. Dieleman testified Mr. Black gave him a sealed envelope with the name "Tabitha Charles" written on the front to deliver to the South Carlin address and that he wrote the date on the envelope, as Mr. Black had instructed, prior to delivering it. He said he attached it to the mailbox and William Bohm testified he found the letter attached to the mailbox. Mr. Black confirmed with Mr. Dieleman that the letter had been delivered. William Bohm, as well as Mr. Dieleman, Jason Bohm, and Ms. Charles, identified the envelope at trial and Ms. Charles testified the threat letter was inside the envelope.

[¶31] The jury was properly instructed on the burden of proof: "The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence on the questions of guilt or innocence. The burden is always on the State to prove the defendant's guilt beyond a reasonable doubt as to each element of the offense." It was also told that Mr. Black is presumed innocent "until the case has been finally submitted to the Jury and until the Jury has found that this presumption has been overcome by the evidence in the case convincing you of his guilt beyond a reasonable doubt." We presume the jury followed these instructions. *Solis v. State*, 2013 WY 152, ¶ 49, 315 P.3d 622, 633 (Wyo. 2013) (citing *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000)).

### *Argued Facts Not in Evidence*

[¶32] Mr. Black argues the prosecutor, by stating it was a "[s]mart move" not to cross-examine Ms. Reed on the details of her findings because she "would have explained that to him," improperly argued facts not in evidence. He claims the prosecutor's comments transgressed a clear and unequivocal rule of law because although we allow counsel great latitude during closing argument, it is well-settled a prosecutor's "arguments are limited to the evidence presented in the courtroom." *Montoya*, 971 P.2d at 136-37 (citing *Chavez-Becerra v. State*, 924 P.2d 63, 70 (Wyo. 1996)). *See also, Dice v. State*, 825 P.2d 379, 384 (Wyo. 1992) ("It is clear that great latitude is allowed counsel in argument of cases, but counsel must keep within the evidence . . . .") (citation omitted). The State argues the prosecutor's comments were proper because they did not expressly identify the similarities and differences Ms. Reed found.

[¶33] Most of the prosecutor's comments were proper. "In closing arguments, a prosecutor has wide latitude to argue the evidence in the record and all reasonable inferences which can be drawn from that evidence." *See Larkins*, ¶ 95, 429 P.3d at 50 (citation and quotations omitted). *See also, Dysthe v. State*, 2003 WY 20, ¶ 24, 63 P.3d 875, 884 (Wyo. 2003) ("Prosecutors, just like defense counsel, may review the evidence and suggest to the jury inferences based thereon.") (citation omitted). The prosecutor suggested Mr. Black could have cross-examined Ms. Reed on whether there "were …any similarities" and about "the things that [she was] looking for" and, had he done so, her answers would have been unfavorable to him. Ms. Reed testified to the things she looked for in her analysis ("certain patterns or unusual letter formation, where someone doesn't write everything on the baseline, punctuation or letters different than normal"). Those facts were in evidence. Moreover, she testified "if there are a lot of similarities with not a lot of dissimilarities, then I make my opinion." A reasonable inference from her "highly probable" opinion is that she found similarities and those similarities outnumbered the differences.

[¶34] The prosecutor also suggested Mr. Black could have asked Ms. Reed, "Did you see anything that suggested this?" It is unclear from the record what the prosecutor was referring to with this comment. As such, we cannot say it misstated the evidence. *See Mraz*, ¶ 59, 378 P.3d at 293-94 (prosecutor's "somewhat vague comment on the evidence" during closing argument did not rise to the level of plain error).

[¶35] As to the prosecutor's comment that Mr. Black could have asked Ms. Reed "what similarities she found," Ms. Reed did not testify to the similarities she found between the letter and the known samples. A review of our case law where we have found a prosecutor's closing argument to have violated the rule against arguing facts not in evidence reveals a prosecutor must do more than suggest that absent testimony or evidence would have been damaging to the defendant. The prosecutor must have actually stated facts not in evidence.

[¶36] In *Carter*, a search of Mr. Carter's home found notebooks containing pay/owe sheets and a "to do" list with an entry stating, "sell dope." *Carter v. State*, 2012 WY 109, ¶ 4, 282 P.3d 167, 168 (Wyo. 2012). During trial, the prosecutor informed the court in the jury's presence that before he could admit the notebooks into evidence, two pages had to be excised "because there is potentially prejudicial information." *Id*., ¶ 7, 282 P.3d at 169. The pages were removed, and the notebooks were admitted into evidence. *Id*. The defense argued to the jury that the notebooks appeared "old" so perhaps they were written concerning other drugs being sold. *Id*. In closing, the prosecutor told the jury to "remember the rest of the testimony about the notebooks. *The pages we unfortunately had to take out relate to a date that was only three days prior to [Mr. Carter's] arrest. So there are contemporaneous notes." Id*. (emphasis added). We concluded such reference to the extracted pages constituted prosecutorial misconduct because it referred to facts not in evidence. *Id.*, ¶ 17, 282 P.3d at 171.

[¶37]   In *Condra*, the State charged Mr. Condra with larceny by bailee after he sold two snowmobiles and a trailer which he had agreed to store for a friend. *Condra v. State*, 2004 WY 131, ¶¶ 1, 3, 100 P.3d 386, 388 (Wyo. 2004).   At trial, the prosecutor told the jury during closing argument that proof of ownership is not required to license a vehicle in Wyoming and that Mr. Condra deceived the county clerk into believing he owned the trailer by writing in a date that he purchased the trailer in order to obtain a license for it.  *Id.*, ¶ 20, 100 P.3d at 391.  However, Mr. Condra had explicitly denied during cross-examination that he claimed ownership of the trailer in order to obtain a license for it and there was no evidence concerning the procedure for licensing a trailer in Wyoming.  *Id.*, ¶¶ 20-21, 100 P.3d at 391-92.  We decided the prosecutor's comments were not reasonable inferences to be drawn from the evidence but rather "new, additional facts introduced by way of closing argument."  *Id.*, ¶ 21, 100 P.3d at 392.

[¶38]   In *Montoya*, Mr. Montoya's defense theory at his possession of marijuana trial was that he was not a marijuana smoker and thus did not intentionally possess the marijuana found in his pocket.  *Montoya*, 971 P.2d at 135-36.   During closing argument, the prosecutor stated Mr. Montoya had admitted during a presentence investigation on an earlier charge that he had used marijuana for over twenty years.  *Id.* at 136.  Yet, Mr. Montoya had denied making the admission and the prosecutor never presented any evidence at trial to prove he did.  *Id.* at 136.  We concluded the prosecutor improperly failed to confine his argument to the evidence presented in the courtroom.  *Id.*

[¶39]   In *Seyle*, Mr. Seyle was convicted of manslaughter of his two-year old stepson. *Seyle v. State*, 584 P.2d 1081, 1083 (Wyo. 1978).  At trial, he alleged the child had fallen in the bathroom and his wife, the child's mother, was present at the time.  *Id.* at 1084.  The child's mother was not called to testify at trial by either the State or Mr. Seyle.  *Id.*  In closing argument, the prosecutor commented, without objection, on the mother's failure to testify.  *Id.* at 1085.  In doing so, the prosecutor referred to the mother's failure to stand up to Mr. Seyle while he was abusing her child and told the jury the mother "is still sticking up for him."  *Id.* at 1085 n.1.  The prosecutor also suggested the reason the mother did not want to testify was because she did not want to be subject to the prosecutor "cross-examining her as to why she would stand idly by and permit these things to be done to this child."  *Id.*   On appeal, Mr. Seyle argued, among other things, that the prosecutor improperly speculated as to what the mother's testimony would have been had she taken the stand.  *Id.* at 1087.  Reviewing for plain error, we concluded:

> While a prosecutor may infer in argument that the absent testimony would have been material and damaging to the defendant, he may not go further by suggesting the content of such testimony. . . . Since the wife did not testify, there is no basis in the evidence to suggest what the wife would have said had she testified.   Here, the prosecutor stated that the

defendant's wife was 'still sticking up for him' and suggested that she didn't take the stand because she didn't want to have to say 'why she would stand idly by and permit these things to be done to this child.' . . . To the extent that this observation is not reflected by the evidence, it was an improper comment.

*Id.*

[¶40] Mr. Black argues the prosecutor suggested the content of what Ms. Reed would have testified to when he told the jury that defense counsel's failure to cross-examine her on the similarities she found was a "smart move" because "she would have explained that to him." The State argues these statements did not cross the line established by *Seyle.* We note that it is always improper for prosecutors to suggest they have personal knowledge of evidence not presented in court, and to suggest jurors should convict on the basis of such evidence. Here, it is unnecessary to determine whether these particular comments violated those rules because in the context of this trial, such comments were not prejudicial.

[¶41] The prosecutor's comments were brief and made in rebuttal closing argument in a case where, as we have already explained, the evidence of guilt was overwhelming. Moreover, the comments were largely cumulative of Ms. Reed's testimony. The prosecutor indicated in rebuttal that had Mr. Black cross-examined Ms. Reed as to the nature and number of similarities she found, those facts would have been unfavorable to him. Yet, as we have already explained, by opining it was "highly probable" Mr. Black wrote the letter, Ms. Reed obviously found more similarities than differences. Moreover, the jury was informed prior to the presentation of evidence and before closing argument that it "must determine the facts *from the evidence produced here in court.* . . . As to any statement made by counsel in your presence concerning the facts of the case, you must not regard such a statement as evidence." Again, we presume the jury followed this instruction. *Solis,* ¶ 49, 315 P.3d at 633; *Guy*, ¶ 19, 184 P.3d at 694.

[¶42] In conclusion, as to both claims of prosecutorial misconduct, Mr. Black has failed to show the challenged comments to have either violated a clear and unequivocal rule of law or that there is a reasonable probability that the jury would have reached a verdict more favorable to him had the prosecutor not made them.

> **2. Did the district court plainly err in failing to instruct the jury that it had to find he acted voluntarily?**

[¶43] The district court instructed the jury that to find Mr. Black guilty of intimidating or influencing a witness, it had to find beyond a reasonable doubt that (1) on or about October 2017 through April 2018; (2) in Sheridan County, Wyoming; (3) Mr. Black; (4) by threats; (5) attempted to intimidate or attempted to influence; (6) a witness, Tabitha Charles, in the discharge of her duty. Mr. Black argues § 6-5-305(a) is a general intent crime which

required the State to show he undertook the prohibited act voluntarily. *See Smith v. State*, 902 P.2d 1271, 1280-81 (Wyo. 1995). As a result, he claims the district court erred in not instructing the jury that voluntariness is an element of the charged crime. He concedes plain error review applies because he did not object to the failure to provide a voluntariness instruction. *Granzer v. State*, 2008 WY 118, ¶¶ 18-19, 193 P.3d 266, 271-72 (Wyo. 2008). *See also, Sindelar v. State*, 2018 WY 29, ¶ 16, 416 P.3d 764, 768 (Wyo. 2018). Because the allegedly deficient jury instructions clearly appear in the record, the first prong of plain error review is satisfied. However, once again, he has not satisfied his burden on the second or third prongs.

[¶44] Mr. Black relies on *Smith* for the proposition that § 6-5-305(a) is a general intent crime. The State suggests this holding in *Smith* "is generally inconsistent with this Court's more recent interpretations of specific versus general intent crimes." Nevertheless, because it claims no voluntariness instruction was required in this case even if § 6-5-305(a) is a general intent crime, the State does not present any argument for abrogation of *Smith*. Because neither party has advocated for a reversal of *Smith* in this respect, we will assume for purposes of this appeal that § 6-5-305(a) is a general intent crime. That being said, we agree with the State that Mr. Black has not shown that the district court plainly erred in failing to provide a voluntariness instruction.

[¶45] Mr. Black's argument that the district court should have provided the jury a voluntariness instruction hinges on *Seymore*. Mr. Seymore was convicted by a jury of escape under Wyo. Stat. Ann. 6-5-206(a) (LexisNexis 2005) for failing to return to a community corrections facility at the scheduled time. *Seymore*, ¶¶ 2-4, 152 P.3d at 403. On appeal, he argued the jury instructions were erroneous because they failed to inform the jury that escape is a specific intent crime requiring him to have "specifically intended to 'evade the course of justice' by 'avoiding confinement.'" *Id.*, ¶¶ 13-14, 152 P.3d at 405-06. We concluded escape is a general intent crime. *Id.*, ¶ 14, 152 P.3d at 406. We went on to decide, however, that the instructions were inadequate because they did not require the jury to find Mr. Seymore voluntarily failed to return to the community corrections facility on time. *Id.*, ¶ 15, 152 P.3d at 406. We reasoned: "[W]ithout voluntary conduct, there is no *mens rea*. No crime has been committed, for instance, if an adult community corrections resident fails to return to the facility because of disabling injuries suffered in an automobile accident or a natural calamity." *Id.*

[¶46] We recently rejected a similar argument that *Seymore* requires a voluntariness instruction whenever the charged crime is a general intent crime. *See Wyant v. State*, 2020 WY 15, --- P.3d ---- (Wyo. 2020). Ms. Wyant was convicted by a jury of three counts of second-degree sexual assault under § 6-2-303(a)(vii) (LexisNexis 2019) based on her sexual relationship with an inmate at the Wyoming State Penitentiary while she was employed there. *Id.*, ¶¶ 3-4, --- P.3d at ----. Relying on *Seymore*, she too claimed that because her crimes were general intent crimes, the district court had plainly erred in not instructing the jury that it had to find beyond a reasonable doubt that she acted voluntarily.

*Id.*, ¶¶ 7, 9, --- P.3d at ----.  In particular, she relied on the following statement from *Seymore*, which was originally quoted from *Dorador v. State*, 573 P.2d 839, 843 (Wyo. 1978):  "When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, ***the trial judge asks the jury whether the defendant intended to do the outlawed act.***"  *Id.*, ¶ 10, --- P.3d at ---- (quoting *Seymore*, ¶ 15, 152 P.3d at 406-07 (emphasis added)).  We concluded this statement had been taken out of context:

> *Dorador* harkens back to the days when district courts were required to provide instructions defining general and specific intent, including that the defendant knowingly performed an act which the law forbids and defined knowingly as 'voluntarily and intentionally, and not because of mistake or accident or other innocent reason.  *Reilly* [*v. State*, 2002 WY 156], ¶ 9 n.1, 55 P.3d [1259,] 1262 n.1 [(Wyo. 2002)].  We have since acknowledged such instructions are unnecessary due to their "vagueness and general failure to enlighten juries." *Compton v. State*, 931 P.2d 936, 941 (Wyo. 1997).

*Wyant*, ¶ 10, --- P.3d at ----.  We also concluded *Seymore* had "explicitly limited its holding to its facts—escape under § 6-5-206(a)," and we had "never extended *Seymore* beyond those facts."  *Id.*, ¶ 11, --- P.3d at ----.  Finally, we noted that the general weight of authority from other jurisdictions shows a voluntariness instruction is not necessary unless there is evidence suggesting the defendant's conduct was not voluntary.  *Id.*, ¶ 12, --- P.3d at ---- (citing *State v. Almaguer*, 232 Ariz. 190, 303 P.3d 84, 91 (Ariz. Ct. App. 2013); *State v. Pierson*, 201 Conn. 211, 514 A.2d 724, 728 (1986); *Baird v. State*, 604 N.E.2d 1179, 1176 (Ind. 1992)).  We concluded Ms. Wyant had not claimed, and the evidence did not suggest, her actions were not voluntary.

[¶47]  The same result ensues here.  *Seymore* does not demonstrate the district court transgressed a clear and unequivocal rule of law by failing to provide a voluntariness instruction.  Nor did Mr. Black claim, or the evidence suggest, his actions were not voluntary.  He argues the evidence suggested Mr. Dieleman may have delivered the letter on his own accord as a favor to Mr. Black for "sticking up for him."  This assertion that someone else committed the crime does not raise any issue of whether Mr. Black acted voluntarily, if he wrote and delivered the letter.  There is simply no evidence that Mr. Black's actions in writing the letter and causing its delivery were anything but voluntary. *Hopkins v. State*, 2019 WY 77, ¶ 9, 445 P.3d 582, 586 (Wyo. 2019) ("An act is voluntary if the actor intended to do it (as opposed to an event occurring accidentally or involuntarily).") (citation omitted).  *See also*, 21 Am. Jur. 2d *Criminal Law* § 119 ("To constitute 'voluntary conduct' for which a person can be held criminally liable, the act in question must be the result of the exercise of the defendant's conscious choice to perform

it, and not the result of reflex, convulsion, or other act over which a person has no control.").

[¶48]   Moreover, as we have twice previously stated, the evidence of Mr. Black's guilt was overwhelming.  He has not shown he was prejudiced by the district court's failure to instruct on voluntariness.  *See Weston v. State*, 2019 WY 113, ¶ 37, 451 P.3d 758, 768 (Wyo. 2019) ("We will not find prejudice when the jury is [allegedly] incorrectly instructed on an element of the crime if 'the element [was] not contested at trial or [the] evidence of the defendant's guilt is overwhelming.'") (quoting *Compton*, 931 P.2d at 941).

## CONCLUSION

[¶49]   Mr. Black has not shown the prosecutor's comments in rebuttal closing argument or the district court's failure to instruct the jury on voluntariness constituted plain error.

[¶50]   We affirm.

15